A11A0730. PALMYRA PARK HOSPITAL, INC. v. PHOEBE SUMTER MEDICAL CENTER.
A11A0731. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. PHOEBE SUMTER MEDICAL CENTER.
A11A0732. PALMYRA PARK HOSPITAL, INC. v. PHOEBE PUTNEY MEMORIAL HOSPITAL.
A11A0733. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. PHOEBE PUTNEY MEMORIAL HOSPITAL.
(714 SE2d 71)

BARNES, Presiding Judge.

We have consolidated for review these cases appealing two superior courts' decisions to reverse the grant of a hospital certificate of need (CON) issued by the Georgia Department of Community Health (DCH). The primary issue on appeal is whether DCH properly applied the applicable statutes and rules when it granted

---

[17] *Id.*

Palmyra Park Hospital's application for a CON to provide basic perinatal services. A 2008 amendment to the CON statute, OCGA § 31-6-42 (b.2), provides that a hospital seeking a CON for these services does not have to establish a "need" for them. In deciding Palmyra's application, DCH considered how the exclusion of the "need" consideration affected its determination. Two competing hospitals opposed the application and appealed DCH's final decision to the superior courts in their counties. Both courts held that DCH erred in granting the CON, and both Palmyra and DCH appeal these superior court decisions. After reviewing the record, briefs, statutes, and case law, we conclude that the superior courts erred in reversing the final agency decision approving the CON.[1]

Neither the superior nor the appellate courts review DCH decisions de novo. *Dept. of Community Health v. Gwinnett Hosp. System*, 262 Ga. App. 879, 882 (586 SE2d 762) (2003). Instead, the reviewing court determines whether "substantial evidence" supports the agency's findings of fact, and whether the conclusions of law drawn from those findings of fact are sound. *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 161 (3) (664 SE2d 223) (2008). The reviewing courts may reverse an agency decision if it was based on legal error and unlawful procedures, was arbitrary and capricious, or prejudiced the opposing parties' substantial rights. OCGA § 31-6-44.1 (a) (formerly OCGA § 31-6-44 (m)).

The CON program, OCGA § 31-6-40 et seq., establishes a comprehensive system of planning for the orderly development of adequate health care services throughout the state. OCGA § 31-6-1. *HCA Health Svcs. v. Roach*, 263 Ga. 798, 801 (3) (b) (439 SE2d 494) (1994). DCH is the "lead planning agency for all health issues" in Georgia. OCGA § 31-2-1 (1). OCGA § 31-6-42 (a) specifies that DCH will issue a CON that is "consistent with" a list of general considerations, including the establishment of a need for the services. Under DCH regulations, "need" is based on several factors, including area population and the use of existing services. OCGA § 31-6-42 (a) (2); Ga. Comp. R. & Regs. r. 111-2-2-.24 (3) (b).

The Georgia General Assembly overhauled the CON statute in 2008. Among other things, the 2008 legislation added three additional criteria for consideration,[2] for a total of seventeen, OCGA §

---

[1] St. Francis Hospital, Inc., located in Muscogee County, has filed amicus briefs stating that its CON application for basic perinatal services was approved in March 2010, and that the appeal in that case is being stayed pending the outcome of these cases.

[2] The three new considerations are that the proposed new service meets the department's minimum quality standards, that it can obtain the necessary resources, including personnel, and that it is "an under[-]represented health service, as determined annually by the department." OCGA § 31-6-42 (a) (15)-(17).

31-6-42 (a) (15)-(17), and introduced a second subsection addressing CON applications for "Destination Cancer Hospitals," OCGA § 31-6-42 (b.1).[3] The amendments revised the appeals process, abolishing the former Health Planning Review Board and creating a State Certificate of Need Panel, "an agency separate and apart from the department" consisting of a panel of independent hearing officers "to review the department's initial decision to grant or deny a certificate of need application." OCGA § 31-6-44 (a). They also added a third level of administrative review, which did not exist previously, allowing an aggrieved party to appeal the hearing officer's decision to the commissioner of community health. OCGA §§ 31-6-42 (a), 31-6-44 (i); Ga. Comp. R. & Regs. r. 274-1-.12 (2).

As part of the overhaul, the General Assembly also included a new subsection specifically relevant to a CON application for basic perinatal services. OCGA § 31-6-42 (b.2). "Basic perinatal services" are defined as basic inpatient care and follow-up for pregnant women and newborns without complications, as well as community education on prenatal care and the identification and transfer of high-risk patients. OCGA § 31-6-2 (3).[4]

One of the seventeen considerations in OCGA § 31-6-42 (a) is that a CON applicant must show that the population to be served has a "need" for the services under certain circumstances. OCGA § 31-6-42 (a) (2). The new subsection related to CON applications for basic perinatal services provides that under some circumstances, DCH shall not apply the "need" consideration. OCGA § 31-6-42 (b.2) (the "Areawide Need Exception"). Those circumstances are that only one facility in the applicant's county, and fewer than three facilities in contiguous counties, offer basic perinatal services. Id.

Palmyra Park Hospital in Dougherty County sought a CON in August 2008 for basic perinatal services. The application met the requirements for the Areawide Need Exception in OCGA § 31-6-42 (b.2), as only one other facility in Dougherty County, Phoebe Putney Memorial Hospital, and fewer than three in contiguous counties, one of which is Phoebe Sumter Medical Center in Sumter County, offers this service. Palmyra sought to renovate unused hospital space and convert seven of its existing 248 beds to "labor/delivery/recovery/postpartum" (LDRP) beds, which allow a new mother to remain in

---

[3] In 2009, the General Assembly "recreated" DCH, which assumed the duties and powers of the former DCH, the Division of Public Health of the Department of Human Resources ("DHR"), and the Office of Regulatory Services of the Department of Human Resources, which were not otherwise specifically transferred to DHR. OCGA § 31-2-4 (a) (1). DCH remains responsible for administering the CON statute. OCGA § 31-6-43.

[4] OCGA § 31-6-40.2 defines perinatal services other than "basic" as those relating to high-risk pregnancies, complications, moderately ill newborns, and neonatal intensive care.

the same room with her baby and family during her hospital stay. No other hospital in the area offers LDRP rooms. The project would primarily serve Dougherty County residents, and secondarily serve nine other counties, including Sumter County.

Phoebe Putney and Phoebe Sumter opposed Palmyra's application. DCH staff reviewed the application and awarded a CON to Palmyra for basic perinatal services. The Phoebe hospitals appealed the initial decision to the Certificate of Need Panel, which appointed a hearing officer. OCGA § 31-6-44 (d).

The hearing officer conducted a de novo review and considered Palmyra's application in light of the general considerations in OCGA § 31-6-42 (a) and Ga. Comp. R. & Regs. r. 111-2-2-.09 (1), the Areawide Need Exception in OCGA § 31-6-42 (b.2) and Ga. Comp. R. & Regs. r. 111-2-2-.09 (3), and DCH's specific review considerations for perinatal services, Ga. Comp. R. & Regs. r. 111-2-2-.24. In a 37-page opinion containing 95 findings of fact and 35 conclusions of law, the hearing officer determined that Palmyra met the requirements for a CON allowing it to offer basic perinatal services.

Upon further request for review from the Phoebe hospitals, the commissioner of community health affirmed the hearing officer's decision, adopting his findings of fact and conclusions of law as the final DCH agency decision. The Phoebe hospitals filed suit in their respective counties, enumerating errors involving the merits of the decision and the propriety of the administrative procedures applied.

Both superior courts reversed DCH's grant of a CON to Palmyra to deliver basic perinatal services, holding, among other things, that DCH exceeded the scope of its statutory authority by improperly interpreting the effect of the 2008 Areawide Need Exception amendment to the CON statute, and that the initial staff decision granting the CON was insufficient in scope and content. The Sumter County Superior Court also found as error DCH's failure to consider the project's adverse effect on Phoebe Sumter's staffing, which was severely affected by a tornado that destroyed the hospital in 2007.

Palmyra and DCH argue on appeal that the trial courts erred in failing to defer to the agency's interpretation of the applicable rules and statutes, improperly interpreted the 2008 CON statute amendment that applies specifically to applications for basic perinatal services, OCGA § 31-6-42 (b.2), and erred in finding prejudicial procedural deficiencies in DCH's 13-page initial staff decision.

1. Palmyra and DCH argue that the trial courts erred in failing to defer to DCH's interpretation of the statute and in concluding that DCH exceeded its statutory authority by improperly expanding the scope of the Areawide Need Exception in OCGA § 31-6-42 (b.2). They also argue that the trial court erred in interpreting the Areawide Need Exception based on the more-specific 2008 amend-

ments related to the requirements for Destination Cancer Hospitals in OCGA § 31-6-42 (b.2).

While reviewing courts defer to agency interpretations of the statutes they are charged with administering, that deference applies only as far as the agency interpretation is consistent with the statute. Administrative agencies may not "change a statute by interpretation, or establish different standards within a statute that are not established by a legislative body." (Footnote omitted.) *North Fulton Med. Center v. Stephenson*, 269 Ga. 540, 544 (1) (501 SE2d 798) (1998). DCH "is authorized only to adopt and implement rules sufficient to administer the Act's provisions, including the CON program." (Citation and punctuation omitted.) Id. The judicial branch determines independently whether the agency's interpretation "correctly reflects the plain language of the statute and comports with the legislative intent." *Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008).

If reviewing courts find that DCH has acted within the authority granted the agency by statute, they defer to DCH's interpretation and application of the CON statute and the rules and regulations it has enacted to fulfill the function given it by the legislative branch. *Pruitt Corp.*, 284 Ga. at 159 (2). The courts defer to agency interpretation when appropriate because

> [a]gencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary. Review overbroad in scope would have the effect of substituting the judgment of a judge or jury for that of the agency, thereby nullifying the benefits of legislative delegation to a specialized body.

*Bentley v. Chastain*, 242 Ga. 348, 350-351 (1) (249 SE2d 38) (1978). The courts must construe statutes in a way that "square with common sense and sound reasoning. It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (Citation and punctuation omitted.) *Gwinnett Hosp. System*, 262 Ga. App. at 886.

The administration of the CON program requires a particularly high level of expertise and specialization. The DCH rules promulgated to administer the program are detailed and lengthy. See, e.g.,

Ga. Comp. R. & Regs. r. 111-2-2-.07, which describes the review procedures for CON applications. Both the hospital seeking a CON and the hospitals opposing it gather and organize vast amounts of data, expert testimony, and other evidence which are presented to the agency staff, which then interprets and synthesizes the evidence and applies it to the agency rules. See OCGA § 31-6-43. The initial staff decision must be issued within a relatively short period of time, at most 150 days after the CON application is complete. OCGA § 31-6-43 (d), (i).

Further administrative review is also highly specialized. The hearing officer who reviews the initial DCH staff decision is one of five members of the CON Panel, all of whom are appointed by the Governor and are attorneys "who are familiar with the health care industry but who do not have a financial interest in or represent or have any compensation arrangement with any health care facility." OCGA § 31-6-44 (a), (b). The commissioner of community health then reviews the hearing officer's decision upon request and issues the final agency decision. OCGA § 31-6-44 (k), (m).

Against this backdrop, we turn to the final agency decision in this case, which is the commissioner's decision adopting the detailed findings of fact and conclusions of law in the hearing officer's decision. After the initial decision by DCH staff granting Palmyra's CON application, the hearing officer accepted pre-hearing evidence and then held a four-day hearing, during which the Phoebe hospitals and Palmyra presented additional evidence. In his decision affirming the grant of Palmyra's CON application, the hearing officer extensively reviewed the evidence presented, including the personnel, patients, services, finances, and parent corporations of Palmyra, Phoebe Putney, and Phoebe Sumter, in addition to the facilities' current market share of services in the affected counties. He also reviewed the details of Palmyra's proposed project, including the specific services it sought to offer, its current patient population, its projected obstetric population, the service areas of the three hospitals, and the opposing parties' disputed evidence regarding the growth rate of the population to be served.

After addressing the 2008 Areawide Need Exception in OCGA § 31-6-42 (b.2), the hearing officer reviewed the other 16 general considerations in OCGA § 31-6-42 (a) and Ga. Comp. R. & Regs. r. 111-2-2-.09. He addressed the opposing hospitals' contentions that Palmyra failed to establish the absence of "existing alternatives" to its proposed services, as required by OCGA § 31-6-42 (a) (3). For example, only three hospitals in Palmyra's proposed service area offer obstetrical services: the two Phoebe hospitals and Crisp Regional Hospital. The patient populations of two of those three hospitals had little overlap with Palmyra, and only three percent of

patients from Palmyra's proposed service area go to the other five facilities offering perinatal services in the ten rural counties in State Service Delivery Region 10, in which Palmyra is located.

The hearing officer also addressed in detail Phoebe hospitals' assertions that Palmyra's project would have a negative relationship with the existing health care delivery system, would have an adverse impact under the Perinatal Services Rule, and would hinder Phoebe Sumter's ability to recruit health care professionals. The officer found that basic perinatal service providers play an important community role by promoting access and education to low-risk patients and identifying high-risk patients, factors the legislature recognized by creating the Areawide Need Exception Rule in OCGA § 31-6-42 (b.2). Further, citing to specific evidence in the record, the officer found that the new services would promote competition, which typically leads to lower costs and greater innovation, and "will give residents a choice of perinatal providers in the community. Consumer surveys indicate that having choice in health care is important and leads to greater patient satisfaction."

The hearing officer addressed the consideration of lower health care costs, and Phoebe's claims that the project would have an adverse impact on Phoebe's finances and make it unable to sustain its unprofitable clinics and training programs. Analyzing the financial statements of the corporation that owns Palmyra, the hearing officer also concluded that Palmyra had established that its project was financially feasible, and would use Palmyra's facilities more efficiently.

In his conclusions of law, the hearing officer determined that, while Palmyra could not establish the numeric need for more obstetrical beds based on DCH's service-specific methodology or the general need consideration in OCGA § 31-6-42 (a) (2), the 2008 amendment made that consideration inapplicable. The hearing officer also observed, logically, that if the statutory need exception applied — that is, only one facility offered basic perinatal services in the same county and fewer than three facilities offered those services in contiguous counties — there would always be two facilities that provide basic perinatal services within a single county. In other words, there would always be a choice of providers, and the existence of such a choice affects "the evaluation of other general considerations relating to existing providers, particularly those pertaining to existing alternatives, unnecessary duplication, and a project's relationship with the health care delivery system as a whole." Again, the hearing officer did not find that those other considerations were inapplicable, only that they were affected by the absence of the "need" consideration. While DCH rules required "strong justification under other criteria" to grant a CON if existing providers had

significant unused capacity, the Areawide Need Exception provided that justification.

The hearing officer held that no alternatives existed to the proposed new services because Phoebe Putney does not offer LDRP services, and the patient base of the other basic perinatal service providers in Palmyra's service delivery region only minimally overlaps Palmyra's patient base. Additionally, without Palmyra's basic perinatal services, patients had no choice of providers and thus Phoebe could not offer an existing alternative. "It logically follows that a CON applicant is not required to show deficiencies in the existing provider[']s program to demonstrate the absence of existing alternatives to the proposed project, particularly in the context of [the 2008 amendment] exception's emphasis on choice and competition," he held.

The hearing officer then analyzed the evidence regarding duplication of services. First, the services did not duplicate basic perinatal services by providers outside Dougherty County because of the minimal overlap between their patient populations and Palmyra's. Second, in addition to noting that any duplication of Phoebe's services is not "unnecessary" given that the Areawide Need Exception emphasized choice and contemplated such duplication, the officer also found that Phoebe's occupancy rate and utilization percentage established that it did not have "significant unused capacity" under Ga. Comp. R. & Regs. r. 111-2-2-.09 (1) (c) (3).

The proposed new service's relationship with the health care delivery system was also influenced by the need exception, the officer held, although the applicant is not exempt from the need to establish a positive relationship. Palmyra's new service would have a positive relationship with the system, he held, because it would deliver prenatal education and family support services and attract additional obstetrical doctors and nurses, which will improve access to prenatal care and address the high rate of infant mortality in the area. The project will help lower health care costs in the area, and although it would potentially decrease the number of deliveries at Phoebe, its overall impact on the health care system would be positive, the hearing officer concluded.

The officer thoroughly analyzed the financial evidence and concluded that Palmyra's project would have only minimal and not unreasonable adverse effects on existing service providers, specifically on Phoebe, which would remain the dominant area provider. The project would not adversely affect the accreditation or funding of Phoebe's family practice residency program, its Medical College of Georgia medical student training program, the midwifery program at Albany Area Primary Health Care, or Phoebe's status as a Regional Perinatal Center. Finally, the hearing officer individually

addressed all the remaining applicable provisions of DCH's review considerations for perinatal services applications and the general considerations, including financial feasibility, the effect on payors, the fostering of competition without harming quality of care, the needs of health maintenance organizations, the efficient use of existing space, and the access to and distribution of indigent care. Ga. Comp. R. & Regs. r. 111-2-2-.24; OCGA § 31-6-42 (a).

Both superior courts held that DCH exceeded the scope of its statutory authority in interpreting and applying the 2008 Areawide Need Exception amendment to Palmyra's CON application. The courts held that the "plain and unambiguous" language of the Areawide Need Exception only eliminated one of seventeen considerations, and that DCH was not authorized to consider how the exception affected any other consideration. Specifically, the Sumter County Superior Court held that DCH enlarged the scope of the exception beyond its plain terms,

> based on its own, unauthorized interpretation of the legislative purpose underlying the [Areawide Need Exception and] applied the Exception to influence and modify its evaluation of Palmyra's application under several review considerations other than the one consideration set forth in OCGA § 31-6-42 (a) (2).

The Dougherty County Superior Court held that the "sum total of what the General Assembly changed . . . regarding CON applications for basic perinatal services" was to eliminate a single consideration. Despite the very limited change, however, DCH impermissibly interpreted the Areawide Need Exception as embodying the importance of "choice" in applying considerations related to existing providers, existing alternatives, and unnecessary duplication, the court held.

To determine whether DCH acted within the scope of its statutory authority and thus whether we should defer to its interpretation of the statute, we first look at the plain language of the statute. *Handel*, 284 Ga. at 553. The cardinal rule in statutory construction is to ascertain the legislature's intention and effectuate the purpose of the statute. *Five Star Steel Contractors v. Colonial Credit Union*, 208 Ga. App. 694, 696 (431 SE2d 712) (1993). "[T]he literal meaning of the statute prevails unless such a construction would produce unreasonable or absurd consequences not contemplated by the legislature." (Citation omitted.) *Johnson v. State*, 267 Ga. 77, 78 (475 SE2d 595) (1996). "Moreover, in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole" and give all of the words meaning.

(Citation and punctuation omitted.) *Ga. Society of Ambulatory Surgery Centers v. Ga. Dept. of Community Health*, 309 Ga. App. 31, 35 (1) (710 SE2d 183) (2011) (agency requests exceeded scope of information that DCH was authorized to obtain under statute).

Thus, in considering the agency's interpretation of OCGA § 31-6-42 (b.2), we "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). If the language of the authorizing statute is plain and the agency's interpretation of it reflects that plain language and comports with the legislative intent, we will defer to the agency's statutory interpretation and affirm the administrative decision. See *Handel*, 284 Ga. at 553.

The superior courts held that the plain language of OCGA § 31-6-42 (b.1) limits its application to only one consideration. They held that the Areawide Need Exception amendment simply eliminated the consideration of need and nothing else, especially when considered in light of the more explicit and detailed amendments regarding Destination Cancer Hospitals in OCGA § 31-6-42 (b.1). In that subsection, the legislature excluded eight of the seventeen general considerations, and replaced them with eight considerations specific to that kind of facility. Id. The superior courts reasoned that, if the legislature had intended the Areawide Need Exception for basic perinatal services to affect any other considerations, it would have said so, as it did in the Destination Cancer Hospitals amendment. The courts concluded that in granting Palmyra's CON, the agency improperly expanded its authority by interpreting why the legislature eliminated the "need" consideration and how its absence affected other considerations, such as whether alternatives to the proposed service exist and whether the proposed service will duplicate existing services.

In contrast, Palmyra and DCH assert that the superior courts erred in finding that the agency exceeded its statutory authority and that its interpretation of the Areawide Need Exception was not entitled to deference. We agree. While the "plain language" of the statute merely removes from consideration the existence of "need," the statute does not prohibit DCH from considering how this omission affects the other considerations. Further, the specificity of the Destination Cancer Hospitals amendment in OCGA § 31-6-42 (b.1) does not establish the legislature's intentions related to the basic perinatal services amendment in OCGA § 31-6-42 (b.2), nor does the former make the latter plain and unambiguous.

A Destination Cancer Hospital is by definition designed to serve a patient base composed largely of residents from other states. OCGA § 31-6-2 (13). It must be located within twenty-five miles of a commercial airport with five or more runways, and its beds, services,

and equipment are not counted as department inventory when determining the need for those items by other providers. OCGA § 31-6-40 (d). Thus, the application of review criteria related to the state-wide health plan and service areas is completely different, as reflected by the legislation. Rather than consider the existence of alternatives in the service area under OCGA § 31-6-42 (a) (3), for example, a Destination Cancer Hospital must demonstrate that at least 65 percent of its patient base will come from outside the state. OCGA § 31-6-42 (b.1) (2). Rather than show that the proposed facility would have a positive relationship with the existing health care system "in the service area," under OCGA § 31-6-42 (a) (10), a Destination Cancer Hospital applicant must show a positive relationship with the health care system "on a regional basis," OCGA § 31-6-42 (b.1) (6), and must also show that it has a transfer agreement with a nearby hospital with adequate emergency services. OCGA § 31-6-42 (b.1) (6.1). Because the considerations applicable to such a facility differ radically from those applicable to services designed primarily for residents, OCGA § 31-6-42 (b.1) had to be very specific about changes in the applicable considerations.[5]

In contrast, a CON application for basic perinatal services must be reviewed in light of the statute as a whole, and in light of the considerations applicable to a health care system designed primarily for Georgia residents. In considering Palmyra's CON application, DCH did not *exclude* any considerations other than the "need" consideration specified in OCGA § 31-6-42 (b.2). Rather, it determined that some of the considerations were *affected* by the Areawide Need Exception.

> In determining whether a given application is consistent with the considerations set forth in OCGA § 31-6-42 and [DCH's] rules, the [Department] was entitled to place more emphasis on one consideration than another absent some mandatory language to the contrary. Moreover, such emphasis is entitled to great deference by a reviewing court.

(Citation and punctuation omitted.) *Gwinnett Hosp. System*, 262 Ga. App. at 889-890 (3).

The general considerations in OCGA § 31-6-42 (b) are broad, and the agency rules provide the level of detail required to consider CON applications with some level of consistency. Thus, DCH uses not only

---

[5] We note that the statute describing the new institutional services that require the issuance of a CON provides that DCH shall not accept any applications for *new* Destination Cancer Hospitals beginning January 1, 2010, although existing ones may still seek to upgrade, replace, or buy diagnostic or therapeutic equipment. OCGA § 31-6-40 (d).

the general considerations listed in OCGA § 31-6-42 (b), but also its

standards and criteria interpreting those [considerations].
Implicit in the interlocking parts of the statutory scheme is
the legislative intent that [DCH] use the considerations as a
base, filling the interstices of the statutory considerations
with the agency's rules interpreting and implementing
them.

*North Fulton Community Hosp. v. State Health &c.*, 168 Ga. App.
801, 804 (2) (310 SE2d 764) (1983).

Both superior courts found error in the agency's discussion of
the apparent legislative intent to create a "choice" of basic perinatal
providers in enacting the Areawide Need Exception. The courts also
found that DCH exceeded its statutory authority by determining
that the presence of a choice of providers was a factor that affected
other considerations in OCGA § 31-6-42 (b). The agency did not,
however, conclude that any other considerations were inapplicable
because of the Areawide Need Exception; it only examined how they
were affected by the absence of a need requirement. The consider-
ations do not apply in a vacuum.

Just as we consider the entire statute to gather the legislative
intent when construing language in part of the statute, giving all of
the words meaning, *Ga. Society of Ambulatory Surgery Centers*, 309
Ga. App. at 35 (1), when reviewing whether an agency exceeded its
statutory authority, we look at not only a portion of the agency
decision but at the decision as a whole. In this case, the findings and
conclusions that refer to "choice" are but a fraction of the final DCH
decision, and our previous detailed review of the hearing officer's
decision establishes that the agency did not improperly enlarge the
scope of the Areawide Need Exception or exceed its authority by
approving Palmyra's CON application.

While it is true, as the superior courts noted, that the plain
language of the statute provides only that the applicant need not
prove the "need" for the service, DCH did not improperly extend the
exception to other considerations such as existing alternatives and a
positive relationship with the health care system. It simply factored
the consequences of the Areawide Need Exception into its analysis.
That the application of the exception results in a "choice" of
providers is unquestionable. How the existence of a choice of
providers affects other considerations is exactly the kind of statutory
interpretation to which reviewing courts must defer. See *Pruitt
Corp.*, 284 Ga. at 159.

After a careful review of the parties' arguments, the record, the
statutes, and the case law, we conclude that DCH did not exceed its

statutory authority in its interpretation of the legislative intent behind the Areawide Need Exception in OCGA § 31-6-42 (b.1), or in its application of the statute in this case. Because the agency did not exceed its authority, we defer to its interpretation and application of OCGA § 31-6-42 (b) and (b.1), mindful that the purpose of the CON program is best fulfilled through a regulatory agency such as DCH.

> [A]n attempt to achieve the goals of the act through random litigation in the courts would likely result in more confusion rather than the orderliness mandated by the statute. Furthermore, we are unable to construe this statute as a mechanism for determination of the respective rights of competitors.

(Citation and punctuation omitted.) *Diversified Health Mgmt. Svcs. v. Visiting Nurses &c.*, 254 Ga. 500, 501-502 (2) (330 SE2d 885) (1985).

The record includes substantial evidence to support the agency's findings of fact, and the conclusions of law drawn from those findings of fact are sound. *Pruitt Corp.*, 284 Ga. at 161. Accordingly, because the agency's decision to grant Palmyra's CON application was not based on legal error or unlawful procedures, was not arbitrary or capricious, and did not prejudice the opposing parties' substantial rights, we reverse the superior courts' orders to the contrary. OCGA § 31-6-44.1 (a).

2. While the Sumter County Superior Court agreed with Phoebe Sumter that the DCH final order disregarded the adverse effect the new service would have on Phoebe Sumter's ability to recruit medical staff, a review of the decision shows that Phoebe Sumter's concerns were taken into account. The hearing officer specifically noted that several of Phoebe's witnesses testified that their primary concern about the new project is that it would dilute the number of qualified staff in the area. While the hearing officer made no specific finding regarding the effect of Palmyra's project on Sumter's ability to recruit medical staff, he did not disregard the issue. He noted that a tornado destroyed Phoebe Sumter, formerly known as Sumter Medical Center, in March 2007, and that the hospital was operating out of a temporary facility as of October 2009. Phoebe had dedicated $25 million to rebuild and restaff the hospital, which is now part of Phoebe's three-hospital system.

In response to the opposing hospitals' staffing concerns, Palmyra presented evidence that it already had nurses on staff with obstetrics experience, has access to its parent company's in-house nurse staffing agency, and has employees at other locations who have expressed interest in working at Palmyra after the new service

begins. The hearing officer found that Palmyra has approximately 150 physicians on staff, including "virtually all local obstetricians and gynecologists who are also already members of Phoebe's medical staff." HCA, Inc., which owns Palmyra, operates 111 perinatal service programs throughout the country, including six in Georgia hospitals. Palmyra presented evidence that its LDRP model of obstetrical services is more efficient and requires fewer staff than the traditional model offered by Phoebe Putney and Phoebe Sumter, and the hospital already has lab, pharmacy, respiratory therapy, anesthesia, and pediatricians on staff to support a Level 1 obstetrics service. After reviewing the final decision, we conclude that DCH did not ignore Phoebe Sumter's staffing concerns.

3. Palmyra and DCH assert that the superior courts erred in finding prejudicial procedural deficiencies in DCH's 13-page initial staff decision. While OCGA § 31-6-42 (e) directs DCH to specify "its reasoning as to and evidentiary support for its evaluation of each . . . applicable consideration and rule," the less-specific OCGA § 31-6-43 (i) simply directs DCH to include in its initial decision "a detailed statement of the reasons and evidentiary support" for its grant or denial of the CON. DCH rules provide that the decision letter shall contain a "detailed statement of the findings related to each *applicable* consideration and standard *relevant* to the decision to issue or deny a Certificate of Need." (Emphasis supplied.) Ga. Comp. R. & Regs. r. 111-2-2-.07 (2) (c) (1).

The Dougherty County Superior Court found that the initial DCH decision issued before the hearing officer's review contained insufficient analysis or evidentiary support for its conclusions about several considerations, including the project's impact on HMOs and the "positive relationship," "existing alternatives," and "unnecessary duplication of services" factors. The Sumter County Superior Court also found that the initial decision made no findings about the effect of the proposed new service on existing services and staffing, or about the "unnecessary duplication" and "unused capacity" considerations, and provided only cursory conclusions about other considerations. The superior courts concluded that the initial decision was based on legal error and unlawful procedures, was arbitrary and capricious, and prejudiced the opposing parties' substantial rights, which are grounds for reversal under OCGA § 31-6-44.1 (a).

DCH argues that the initial decision was sufficient, and that even if it was not, any deficiency was cured by the hearing officer's subsequent administrative review, during which the opposing parties challenged Palmyra's evidence and submitted extensive evidence of their own.

When an agency neglects to follow a procedural rule but its failure inflicts no significant injury on the party entitled to observance of the rule, the error does not prevent further administrative or judicial action. For a procedural defect to violate due process, the defect must be shown to be prejudicial.

(Citations omitted.) *Lentz v. State Personnel Bd.*, 146 Ga. App. 366, 367 (247 SE2d 145) (1978) (procedural defects cured by a hearing).

In response, Phoebe Putney and Phoebe Sumter argue that they were prejudiced by the defects in the initial decision, and that the defects were substantive, not procedural. They argue that they were harmed because they had the burden of proof before the hearing officer, and without a more detailed initial decision they were "left with the unfair, if not impossible, task of disproving something that was not previously found and supported." Phoebe Sumter contends that much of the reasoning and evidence offered by DCH witnesses was introduced after the opponents presented their main case. Palmyra responds that the Phoebe hospitals made essentially the same challenges to Palmyra's application during all three levels of administrative review, and thus were not prejudiced by any deficiency in the initial agency decision.

It is difficult if not impossible for this court to thoroughly review the timing and substance of the evidence the parties submitted during the administrative review process. As is usual in administrative appeal cases, the appellate record index simply lists "Department of Community Health Administrative Record" at page 39, followed by a "Supplement to Administrative Record" at page 4128. The index at the beginning of the administrative record lists only the beginning and ending page numbers for four pleadings, the administrative decisions, and 340 pages of "Pre-Hearing Documents." The last two index entries, "Exhibits" and "Transcript," have no page references at all. The only way for a court to review the substance and timing of all the evidence submitted to the agency would be to sift through thousands of pages in the record without a road map.

Pretermitting whether the initial 13-page decision granting Palmyra's CON application was sufficient, neither Phoebe Putney nor Phoebe Sumter has shown harm in the alleged deficiency. With exceptions not applicable here, OCGA § 31-6-44 (g) provides that "[a] party or intervenor may present any relevant evidence on all issues raised by the hearing officer or any party to the hearing or revealed during discovery and shall not be limited to evidence or information presented to the department prior to its decision." While both Phoebe Putney and Phoebe Sumter assert that "much of the reasoning and evidence offered by DCH witnesses during the appeal

hearing as to considerations ignored in the initial decision was raised for the first time after the opponents put on their main case," they do not describe what they would have done differently if the initial staff decision had been more detailed. Further, a party appealing the hearing officer's decision to the commissioner may seek leave to submit additional evidence. OCGA § 31-6-44 (k) (2). If satisfied that the new evidence "is material and there were good reasons for failure to present it in the proceedings before the hearing officer," the commissioner may order the hearing officer to accept the additional evidence and reconsider the decision. Id. Neither CON application opponent has argued that it sought leave but was denied the opportunity to submit additional post-hearing evidence because DCH surprised it at the hearing.

Accordingly, Phoebe Putney and Phoebe Sumter have not shown harm resulting from a deficiency in the initial decision which prejudiced their ability to present their case to the hearing officer. We conclude, therefore, that the superior courts erred in reversing DCH's decision on this ground.

*Judgments reversed. Adams and Doyle, JJ., concur.*

DECIDED JULY 5, 2011 — ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Nelson, Mullins, Riley & Scarborough, Stanley S. Jones, Jr., Keri F. Conley, Thurbert E. Baker, Attorney General, Isaac Byrd, Deputy Attorney General, Sidney R. Barrett, Senior Assistant Attorney General, E. Tandy Menk, Alex F. Sponseller, Assistant Attorneys General*, for appellants.

*Gatewood, Skipper & Rambo, James M. Skipper, Jr., Parker, Hudson, Rainer & Dobbs, John H. Parker, Jr., David L. Fenstermacher, June G. Veazey, Thomas D. Watry, Joshua B. Belinfante*, for appellees.

*Robert C. Threlkeld*, amicus curiae.

