**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1541. DEKALB COUNTY BOARD OF TAX ASSESSORS     GO-020
        v. CWS SGARR BROOKHAVEN, LLC.

A19A1618. DEKALB COUNTY BOARD OF TAX ASESSORS v.     GO-060
        WRH AZTEC, LLLP.

GOBEIL, Judge.

In these appeals, which we have consolidated, the DeKalb County Board of Tax Assessors (the "Board") challenges the Superior Court of DeKalb County's grant of the taxpayers' respective motions for summary judgment. The Board contends that the trial court erred in granting summary judgment in favor of the taxpayers because a statutory exception allowed the Board to reassess the properties in question based on a significant increase in the sales price of similar properties in the same neighborhood. The Board further asserts that the trial court's interpretation of the statutory exception at issue will force the Board to violate constitutional and

legislative mandates requiring that all comparable properties be assessed uniformly, accurately, and at fair market value. For reasons explained more fully below, we find no error and affirm in both cases.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a trial court's grant of summary judgment de novo, construing the record and all reasonable inferences in favor of the nonmoving party. *Smith v. Found*, 343 Ga. App. 816, 817 (806 SE2d 287) (2017).

*A19A1541*

The facts relevant to these appeals are undisputed and, in Case No. A19A1541, show that CWS owns a garden-style apartment complex[1] known as The Marq at Brookhaven. CWS's property is located in neighborhood 7051 of DeKalb County, was constructed in 1998, and consists of 480 "Class B" apartments.[2] For the 2016 tax year, the Board assessed the property at a value of $57,903,500. CWS appealed that

---

[1] Garden-style apartments are defined as including buildings that are no more than three stories tall.

[2] For tax purposes, the Board classifies all apartments into Classes A, B, C, or D, with Class A apartments commanding the highest rents and Class D apartments commanding the lowest rents.

2

assessment to the DeKalb County Board of Equalization ("BOE"). The BOE affirmed the Board's assessment and set the property's value at $57,903,500. CWS did not appeal the BOE's decision to the superior court, and it paid taxes on the assessed value.

In 2017, the Board conducted an analysis of the Class B apartment complexes that sold in neighborhood 7051 during the 2016 calendar year. According to the Board, that analysis showed that other properties of the same type and class as CWS's property "had experienced a significant increase in the median sales price since January 1, 2016, as compared to earlier years." Based on the 2016 sales analysis, the Board concluded that the CWS's property had been undervalued.[3]

As part of the revaluation process, the Board sent a commercial property appraiser to conduct a site visit of the property. Following that visit, the appraiser recommended a significant increase in the property's assessed value based on "an occurrence of other material factors substantially affecting the [fair market value] within the property's market area including but not limited to . . . market conditions." Accordingly, for the 2017 tax year, the Board assessed the property at $69,573,371.

---

[3] Additionally, based on sales closing after January 1, 2016, the Board decided that it needed to re-value all of the 402 garden-style apartment properties located in DeKalb.

3

CWS appealed that assessment, and the BOE affirmed the Board's valuation. CWS then appealed that decision to the superior court.

*A19A1618*

Similarly, the record in Case No. A19A1618 shows that Aztec owns four parcels of commercial real estate property in DeKalb County, totaling approximately 21.4 acres. An apartment complex, known as the Hidden Colony Apartments, and designated Class B by the Board, is situated on the property. In 2015, the Board valued the subject property at $8,503,560. Aztec appealed the Board's assessment in accordance with OCGA § 48-5-311, and, after a hearing before the BOE, a final fair market combined value of $7,620,948 was established for the property for tax year 2015. Aztec did not appeal this valuation to the superior court.

In May 2016, an appraiser from the DeKalb County Property Appraisal Department conducted a site visit to the subject property, and recommended an increase in the valuation based on market conditions. The analysis described that the 2015 valuation was not valued uniformly with other Class B apartments in the same neighborhood, or in neighborhoods near the subject property. Based on this information, the Board assessed the subject property at $22,339,565 for tax year 2016, an increase of 166% over the 2015 valuation. Aztec appealed this valuation to

4

the BOE, which decreased the value to $20,339,480. Aztec then appealed this valuation to the Superior Court of DeKalb County.

In each case, the taxpayer moved for summary judgment, contending that the two-year freeze provided for in OCGA § 48-5-299 (c) precluded the Board from increasing the value established by the BOE appeal. In response, the Board argued that OCGA § 48-5-299 (c) permitted revaluation because the subject properties' values increased based upon a subsequent significant increase in sales prices of similar, comparable properties. The trial court granted the taxpayers' respective motions for summary judgment, ruling that the Board's stated basis for increasing the properties' valuations—changes in comparable sales—cannot, as a matter of law, constitute a "material factor" as contemplated by OCGA § 48-5-299 (c) (4).

1. The Board contends that the trial court erred in concluding that under OCGA § 48-5-299 (c) (4), a significant increase in sales of comparable properties could not constitute a "material factor[] that substantially affect[s] the current fair market value" of the property. OCGA § 48-5-299; see also Ga. Comp. R. & Regs. 560-11-10-.09 (2) (c) (2). In support of this contention, the Board argues that the plain language of OCGA § 48-5-299 (c) (4) indicates that evidence of significantly increased sales prices of like properties can, as a matter of law, constitute a material factor

5

authorizing a reassessment within two years of a judicial determination of valuation. According to the Board, because the statute is clear and unambiguous, and the plain language of the statute does not exclude "market conditions" as a material factor affecting the current fair market value of property, we should not read any such limitation into the statute.

Where, as here, we are called upon to interpret a statute, we "presume that the General Assembly meant what it said and said what it meant." *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (citation omitted). To that end, we "afford the statutory text its plain and ordinary meaning," and we "read the text in its most natural and reasonable way, as an ordinary speaker of the English language would." Id at 172-173 (1) (citations and punctuation omitted).

> The common and customary usage of the words are important, but so is their context, which includes not only the statutes other provisions, but also the constitutional, statutory, and common law that forms the legal background of the statutory provision in question.

*Johnson v. State*, 304 Ga. 369, 371 (2) (818 SE2d 601) (2018) (citation and punctuation omitted).

This Court previously has held that the purpose of OCGA § 48-5-299 (c) is to "limit the circumstances in which a board of tax assessors could raise the value of real

6

property for the two consecutive years following an appeal wherein the board of equalization or the superior court determined the value of such property." *Mundell v. Chatham County Bd. of Tax Assessors*, 280 Ga. App. 389, 391 (634 SE2d 180) (2006) (citation and emphasis omitted). Legislative exceptions in statutes should be interpreted according to the fundamental rules of statutory construction, and "applied only so far as their language fairly warrants." *Sawnee Elec. Membership Corp. v. Ga. Pub. Svc. Comm.*, 273 Ga. 702, 704 (544 SE2d 158) (2001) (citation and punctuation omitted). Thus, we resolve any doubts "in favor of the general statutory rule, rather than in favor of the exemption." Id. And because we are dealing with a general term of enlargement ("other material factors"), we apply the rule of ejusdem generis. Under that rule, when a statute or exception thereto enumerates by name or description several particular things and then concludes with a general term of enlargement – such as "other factors" – the term of enlargement "is to be construed as being . . . of the same kind or class with the things specifically named unless, of course, there is something to show that a wider sense was intended." *Montgomery County v. Hamilton*, 337 Ga. App. 500, 506 (1) (788 SE2d 89) (2016) (citation and punctuation omitted). See also *Ind. Ins. Agents of Ga. v. Dept. of Banking & Fin. of Ga.*, 248 Ga. 787, 789 (285 SE2d 535) (1982) (under the principle of ejusdem generis, "[w]here

7

general words follow a list of particulars, the general words are construed to embrace only objects similar in nature to the particulars"). Bearing these rules of statutory interpretation in mind, we turn to the statute at issue in this case.

OCGA § 48-5-299 (c) provides that

> [w]hen the value of real property . . . has been established as the result of an appeal decision rendered by the board of equalization . . . pursuant to Code Section 48-5-311 or stipulated by written agreement signed by the board of tax assessors and taxpayer or taxpayer's authorized representative, the new valuation so established by appeal decision or agreement may not be increased by the board of tax assessors during the next two successive years

absent a showing that the reassessment falls within an exception. The exceptions permitting revaluation include when the taxpayer (1) fails to attend the appeal hearing or provide the board of equalization with some written evidence supporting the taxpayer's opinion of value; (2) files a return at a different valuation during the next two successive years; (3) files an appeal pursuant to OCGA § 48-5-311 during the next two successive years; and (4) as relevant to this appeal,

> if, after a visual on-site inspection of the property, it is found that there have been substantial additions, deletions, or improvements to such property or that there are errors in the board of tax assessors' records as to the description or characterization of the property, or the board of tax

8

assessors finds *an occurrence of other material factors that substantially affect the current fair market value of such property*.

OCGA § 48-5-299 (c) (4) (emphasis supplied).

Applying the rules of statutory interpretation, and reading OCGA § 48-5-299 (c) (4) as a whole, we find that the "other material factors" contemplated by the statute must meet two requirements. First, they must be factors that an on-site inspection of the property would reveal. Second, they must be factors that are specific to the particular piece of property at issue. See *Moreton Rolleston Jr. Living Trust v. Glynn County Bd. of Tax Assessors*, 240 Ga. App. 405, 407-408 (2) (523 SE2d 600) (1999) ("prior to the board of assessors changing such appeal establishing valuation of such real property, the board of tax assessors had to conduct . . . a visual on-site inspection of the real property to ascertain if there had been . . . the occurrence of other factors that such visual inspection would reveal that might affect the fair market value of such property, i.e., changes in the surrounding property that a visual inspection would reveal or physical changes in the real property in question").[4] See

---

[4] The Board contends that the interpretation of OCGA § 48-5-299 (c) (4) set forth in *Moreton Rolleston* was mere dicta, and therefore not binding on this Court. Regardless of whether *Moreton Rolleston*'s interpretation of the statutory exception at issue could be considered dicta, however, we find its reasoning persuasive. See *Community & Southern Bank v. Clear Creek Properties*, 333 Ga. App. 280, 284 (1)

also *Center for a Sustainable Coast v. Coastal Marshlands Protection Comm.*, 284 Ga. 736, 737-739 (1) (670 SE2d 429) (2008) (where statute provided that "[n]o person shall remove, fill, dredge, drain, or otherwise alter any marshlands" without a permit, the principle of ejusdem generis meant that the phrase "otherwise alter" applied to runoff affecting the marshes only to the extent that runoff altered the marshlands in a direct physical manner akin to removing, filling, dredging, or draining the marshlands; the phrase did not encompass any upland activities that might eventually cause runoff and thereby affect the marshes).

This interpretation of the exception found in (c) (4) is consistent with that of the State Department of Revenue. See *Palmyra Park Hosp. v. Phoebe Sumter Med. Center*, 310 Ga. App. 487, 491 (1) (714 SE 2d 71) (2011) ("reviewing courts defer to agency interpretations of the statutes they are charged with administering [provided that] the agency interpretation is consistent with the statute"). Included in the revenue department's "Appraisal Procedures Manual"[5] are rules related to the appraisal of real property by a county. See Ga. Comp. R. & Regs. 560-11-10.09. With respect to

n. 9 (775 SE2d 752) (2015) (though not binding, when this Court finds dicta persuasive, we may adopt it).

[5] Ga. Comp. R. & Regs. 560-11-10, et seq.

10

assessments, those rules track the language of OCGA § 48-5-299 (c) and the statutory exceptions thereto, and further provide that any new appraisal conducted in the two-year period covered by OCGA § 48-5-299 (c) requires an on-site inspection

> to determine the occurrence of any substantial additions, deletions, or improvements to such property, errors in the appraisal staff's records *or material factors that substantially affect the current fair market value of such property* since the appeal was heard that established the value of the property.

Ga. Comp. R. & Regs. 560-11-10-.09 (2) (c) (2) (emphasis supplied). In considering whether to recommend to the board of tax assessors an increase in the valuation of recently appealed property,

> the appraiser shall consider the subject property components since the time of appeal (appeal hearing date), such as the value of new improvements, value of additions to existing improvements (footprint of exchanged structure has been altered), major remodeling or renovations to existing structures (footprint of exchanged structure has not been altered), and adjustments to land due to consolidation of tracts, new surveys, zoning changes, land use changes.

Id. Any new appraisal "must be accompanied by a written statement attesting to the fact that an appraiser has conducted the required on-site inspection of the subject

property" and that the visual, on-site inspection revealed at least one of the factors set forth in OCGA § 48-5-299 (c). Id.

Thus, the Department of Revenue's regulations make clear that for the exception at issue to apply, a material factor substantially affecting fair market value must be ascertainable from an on-site inspection of the property, and it must be specific to the piece of property at issue.[6] Additionally, any new assessment based on "other material factors" must be based on current market conditions – i.e., the conditions at the time of the reappraisal, rather than the market conditions at the time of the previously-appealed appraisal. See *Moreton Rolleston*, 240 Ga. App. at 407-408 (2) (holding that a general rise in market forces is not an exception to the general two-year freeze outlined in OCGA § 48-5-299 (c)).

Notably, neither changes in market conditions (including a marked rise in the sales of comparable properties in the same neighborhood) nor a general rise in the value of real estate in a particular neighborhood would be discernable from a visual, on-site inspection of the property. Nor would such factors be specific to a particular piece of property. Accordingly, we find that these factors do not constitute material

---

[6] Examples of material factors meeting this definition could include things such as the removal or abatement of a nuisance adjacent to the property and which impacted the property directly.

12

factors affecting the fair market value of property within the meaning of OCGA § 48-5-299 (c) (4).[7]

2. In its second and third enumerations of error, the Board contends that the foregoing interpretation of OCGA § 48-5-299 (c) (4) will force the Board to violate constitutional and legislative mandates requiring that all comparable properties in a specific geographic area be assessed uniformly, accurately, and at fair market value. Specifically, the Board argues that both the Georgia Constitution and OCGA § 48-5-342 (a) require all counties to ensure that valuations of property for tax purposes are uniform within its territory. The Board further asserts that in the absence of its proposed revaluations, it will be in violation of Department of Revenue regulations that set the standards for determining uniformity. See Ga. Comp. R. & Regs. 560-11-

---

[7] This interpretation of the exception at issue is consistent with our duty to construe a statute "in a way that square[s] with common sense and sound reasoning." (Citation and punctuation omitted.) *Palmyra Park Hosp.*, 310 Ga. App. at 491 (1). In other words, our construction should not "result in unreasonable or absurd consequences not contemplated by the legislature." Id. (citation and punctuation omitted). The statute's focus is to afford some short period of relief from reassessment (and therefore from having to appeal repeatedly from annual reassessments) after the value of the taxpayer's property was established by an appeal. See *Cullum*, 243 Ga. App. at 866. To interpret the phrase "other material factors" as including general market forces or the general rise of real estate values in a certain area, however, would allow the exception to swallow the rule.

2-.56, 560-11-10-.09. Additionally, the Board points to the fact that the revenue commissioner can decline to approve the county's tax digest if it fails to comply with the relevant statutes and regulations promulgated thereunder with respect to uniformity. Thus, the Board reasons that to allow all counties to comply with these statutory and regulatory provisions, we must interpret OCGA § 48-5-299 (c) (4) as encompassing a significant increase in sales prices of comparable properties in a specific neighborhood. We find the Board's reasoning unpersuasive.

Georgia's Constitution requires that "all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Ga. Const. of 1983, Art. VII, Sec. I, Par. III. The uniformity clause simply requires that for purposes of valuing property, all counties must use uniform methods for valuing similar property in similar locations. See *Hawes v. Conner*, 224 Ga. 567, 568 (163 SE2d 724) (1968) (Ga. Const. Art. VII, Sec. I, Par. III (a) "means that the levy for county purposes must be uniform throughout the county. It also means that the levy for State purposes must be uniform throughout the State.") While the uniformity clause may be violated by improper discrimination in the imposition of taxes, *Decatur Tax Payers League v. Adams, Inc.*, 236 Ga. 871, 874 (226 SE2d 69) (1976) that is not the situation in the instant appeals.

14

In these cases, the BOE's evaluations of the properties in the previous appeals "already would have taken [the] existence of increase or decrease in surrounding property values into consideration and, as part of equalization, taken such other property values into consideration in arriving at the fair market value of the specific property on appeal." *Moreton Rolleston*, 240 Ga. App. at 408 (2). Thus, a subsequent reassessment of other comparable property "would bring such other property into equalization and uniformity with the subject property, which had its fair market value determined on appeal." Id. at 410 (2) (b) n. 3. This procedure satisfies the Board's constitutionally-mandated duty to maintain a uniform digest and protects taxpayers from uncertainty within the two years following an appeal. See *Mundell*, 280 Ga. App. at 391.

Furthermore, the statutes and regulations cited by the Board to support its position are designed to ensure that the constitutional requirement of uniformity is met. *Hawes*, 224 Ga. at 568-569. For the Board's argument to succeed, we must assume that the requirement of uniformity means that the relevant constitutional, statutory, and regulatory provisions require that all property within a county must be assessed under exactly the same market conditions at all times. So interpreted, those provisions would require a county to do a blanket reassessment any time the local real

15

estate market experienced what the county saw as a significant change, for either better or worse. That interpretation is not only impractical and unworkable, it is also unsupported by the statutes and regulations on which the Board relies.

OCGA § 48-5-342 (a) requires only that "valuations of property for taxation purposes [be] *reasonably* uniform and equalized . . . within counties." (Emphasis supplied.) See also OCGA § 48-5-343 (a). And the regulation promulgated by the department of revenue to help effectuate this uniformity of assessments makes clear that the department is not necessarily concerned with the ever-changing real estate market in a particular county. The regulation specifically states that it does not obligate a county to revalue property at a specific time, but that instead "[e]ach county board of tax assessors determines for itself when it believes a revaluation of property is necessary for legal compliance. Failure to revalue property shall not in and of itself be a basis for assessment of any penalty." Ga. Comp. R. & Regs. 560-11-2.56 (1) (b).

While OCGA § 48-5-299 (c) places a two-year freeze on property values established by an appeal, the revenue commissioner examines the county's digest for reasonable uniformity only once every three years. See OCGA § § 48-5-341 (7), (8); 48-5-342 (a). And if during any given review year the commissioner determines that

"the taxable values of property [within a county] are not reasonably uniform and equalized[,] . . . he shall [nevertheless] conditionally approve the digest." OCGA § 48-5-344 (a). The Commissioner shall also provide the county's board of tax assessors with written notice of, inter alia, "[a] list of specific reasons that resulted in the digest being conditionally approved . . . ." OCGA § 48-5-344 (b) (1). Moreover, the applicable regulation states that

> the Department [of Revenue]'s digest review cycle is only established to validate that counties are meeting the 40% of fair market value requirement of [OCGA §] 48-5-7[8], and no particular period or schedule of revaluations is required of the counties by the Department for approval of a county digest. Failure to revalue property shall not in and of itself be a basis for assessment of any penalty.

Ga. Comp. R. & Regs. 560-11-2.56 (3) (b).

Finally, the relevant department regulation shows that DeKalb's tax digest was reviewed in 2015 and 2018, see Ga. Comp. R. & Regs. 560-11-2-.56 (3) (c), and the Board has not suggested that it was found in violation of uniformity requirements

---

[8] That statute provides, in relevant part: "Except as otherwise provided in this Code section, taxable tangible property shall be assessed at 40 percent of its fair market value and shall be taxed on a levy made by each respective tax jurisdiction according to 40 percent of the property's fair market value." OCGA § 48-5-7 (a).

with respect to Class B apartments in DeKalb generally or in neighborhoods wherein the relevant properties are located. Moreover, the freeze was in place only through the 2018 tax year. Thus, by the time of the next review of DeKalb's tax digest (scheduled for 2021), the Board will have had the opportunity to adjust the assessments at issue.

In light of these facts, we find that the interpretation of OCGA § 48-5-299 (c) (4) set forth in Division 1 does not impact the Board's ability to comply with statutory and constitutional requirements that property be valued in a reasonably uniform way and at fair market value.

For the reasons set forth above, we affirm the orders of the trial court granting summary judgment in favor of CWS and Aztec, respectively.

*Judgments affirmed in Case Nos. A19A1541 and A19A1618. Dillard, P. J., and Hodges, J., concur.*