## S11A0046. JIG REAL ESTATE, LLC v. COUNTRYWIDE HOME LOANS, INC. et al.

(712 SE2d 820)

HUNSTEIN, Chief Justice.

Appellant JIG Real Estate, a limited liability company that speculates in real estate, brought this appeal to challenge the ruling of the trial court upholding the constitutionality of OCGA § 9-13-172.1 (authorizing the rescission of foreclosure sales under certain conditions) in its suit against appellee Countrywide Home Loans in which JIG asserted it was entitled as high bidder to delivery of the Deed Under Power to the home of appellees James and Tammi Garland. For the reasons that follow, we affirm.

After James Garland, the owner of the property in issue, defaulted on his mortgage, Countrywide, the current holder of the deed to secure debt on the property, initiated foreclosure proceedings. The foreclosure sale was scheduled for March 6, 2007. Prior to that scheduled sale, appellees reached an agreement to cancel the foreclosure and modify the loan terms to cure the default. However, the law firm conducting the sale did not receive timely notice of this development. The record establishes that JIG was the high bidder on the property cried out by the law firm on Countrywide's behalf on March 6th.

Two days after the sale, before any deed or deed under power was delivered, JIG was notified that, because the default had been cured prior to the foreclosure sale, the sale was rescinded pursuant to OCGA § 9-13-172.1. Returned with the notice were all bid funds paid by JIG and a check for two days of 18 percent interest on that payment. See id. at (d). JIG chose to reject the money and demanded delivery of the Deed Under Power; it subsequently filed suit against appellees. The trial court granted summary judgment to appellees on all of JIG's claims.

The statute at the heart of this appeal, OCGA § 9-13-172.1, provides as follows:

> (a) As used in this Code section, "eligible sale" means a judicial or nonjudicial sale that was conducted in the usual

manner of a sheriff's sale and that was rescinded by the seller within 30 days after the sale but before the deed or deed under power has been delivered to the purchaser.

(b) Upon recision of an eligible sale, the seller shall return to the purchaser, within five days of the recision, all bid funds paid by the purchaser.

(c) Where the eligible sale was rescinded due to an automatic stay pursuant to the filing of bankruptcy by a person with an interest in the property, the damages that may be awarded to the purchaser in any civil action shall be limited to the amount of the bid funds tendered at the sale.

(d) Where the eligible sale was rescinded due to:

(1) The statutory requirements for the sale not being fulfilled;

(2) The default leading to the sale being cured prior to the sale; or

(3) The plaintiff in execution and the defendant in execution having agreed prior to the sale to cancel the sale based upon an enforceable promise by the defendant to cure the default,

the damages that may be awarded to the purchaser in any civil action shall be limited solely to the amount of the bid funds tendered at the sale plus interest on the funds at the rate of 18 percent annually, calculated daily. Notwithstanding any other provision of law, specific performance shall not be a remedy available under this Code section.

1. In recognition of the well-established rule that this Court will not consider a constitutional challenge to a statute if there exists a non-constitutional basis for resolving the case, e.g., *Garden Club of Ga. v. Shackelford*, 274 Ga. 653 (2) (560 SE2d 522) (2002), JIG contends that, even assuming that OCGA § 9-13-172.1 is constitutional, the trial court erred by ruling that Countrywide had the right to rescind the foreclosure sale pursuant to OCGA § 9-13-172.1. JIG's argument in this regard is based on its claim that OCGA § 9-13-172.1 serves only to limit damages after rescission and does not itself provide any grounds for rescission of contracts. Hence, JIG asserts, in the absence of authority under OCGA § 9-13-172.1, there were no other legal grounds upon which Countrywide could have rescinded the sale.

We find no merit in this argument. OCGA § 9-13-172.1 authorizes under clearly defined circumstances the rescission of an eligible sale "due to" an automatic stay pursuant to the filing of bankruptcy, id. at (c), or "due to" the occurrence of any one of the three

situations set forth in subsection (d), i.e., because (1) the statutory requirements for the sale were not fulfilled; (2) the default leading to the sale was cured prior to the sale; or (3) the lender and the borrower agreed prior to the sale to cancel the sale based upon an enforceable promise by the borrower to cure the default. JIG, in its contrary construction of the statute, ignores the "due to" phrase in OCGA § 9-13-172.1 (c) and (d) and seeks, by an overly technical and strained focus on the verb tenses used in the statute,[1] to reach an interpretation contrary to the statute's plain and unambiguous meaning. We accordingly reject that construction. See generally *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981) (if the words of a statute are plain and susceptible of having only one natural and reasonable construction, and do not produce any absurd or wholly impracticable consequences, this Court must construe it according to its terms).

2. JIG contends the trial court erred by ruling that OCGA § 9-13-172.1 is not unconstitutionally void for vagueness. In addressing this challenge to the constitutionality of the Act, we recognize at the outset that

> all presumptions are in favor of the constitutionality of an [A]ct of the legislature and that before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this [C]ourt must be clearly satisfied of its unconstitutionality. Moreover, because statutes are presumed to be constitutional until the contrary appears, . . . the burden is on the party alleging a statute to be unconstitutional to prove it.

(Citations and punctuation omitted.) *Dev. Auth. of DeKalb County v. State of Ga.*, 286 Ga. 36, 38 (1) (684 SE2d 856) (2009).

> A statute must be definite and certain to be valid, and when it is so vague and indefinite that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, it violates the first essential of due process of law. [Cit.] To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent. [Cit.]

---

[1] E.g., JIG argues that, because of the past tense use of "was" in the language in OCGA § 9-13-172.1 (d), i.e., that the eligible sale "was rescinded due to . . . [t]he default leading to the sale being cured prior to the sale," the statute cannot be read as meaning that curing of the default is a ground for rescission because the rescission (past tense) had already occurred.

(Punctuation omitted.) *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, 266 Ga. 152, 153 (2) (464 SE2d 808) (1996). Even though First Amendment rights are not implicated in this case,

> [t]his Court has allowed a facial challenge to a statute when it would unconstitutionally impact a fundamental right in "a large fraction" of the cases to which the statute applies. However, when a statute . . . does not implicate a substantial amount of constitutionally protected conduct, a facial vagueness challenge will be upheld only if the enactment is impermissibly vague in all of its applications. In either instance, a facial vagueness claim is cognizable.

(Citations and punctuation omitted.) *Catoosa County v. R. N. Talley Properties*, 282 Ga. 373, 374 (651 SE2d 7) (2007).

(a) JIG asserts that persons of reasonable intelligence[2] would have to make a guess regarding what law a lender is relying upon when rescinding a sale under OCGA § 9-13-172.1 (d) and that such guessing would be "particularly justified" through the eyes of foreclosure sale purchasers due to such purchasers' knowledge of Georgia law that the high bid purchaser at a foreclosure sale has the right to a deed to the foreclosed property even where the borrower may have cured the underlying debt. See, e.g., *Burgess v. Simmons*, 207 Ga. 291 (2) (61 SE2d 410) (1950); *Ellis v. Ellis*, 161 Ga. 360 (1) (130 SE 681) (1925); *Garrett v. Crawford*, 128 Ga. 519 (1) (57 SE 792) (1907). As an initial matter, we hold that this case law has been superseded by the enactment of OCGA § 9-13-172.1 to the extent a judicial or nonjudicial sale comes within its statutory provisions. As to the merits of JIG's argument, it is based on the same strained construction of OCGA § 9-13-172.1 that we rejected in Division 1, supra. Persons of common intelligence would have no difficulty understanding that OCGA § 9-13-172.1 in and of itself authorizes rescission of an eligible sale due to the occurrence of the bankruptcy stay in subsection (c) or one of the three situations set forth in subsection (d). We find JIG's argument about the vagueness of the statute's definition of "eligible sale" is likewise based on this

---

[2] Although JIG asserts that, in assessing the clarity of OCGA § 9-13-172.1, this Court must view the statute from the perspective of foreclosure sale purchasers because they are the persons to whom the statute is directed, see *Bryan v. Ga. Public Service Comm.*, 238 Ga. 572, 574 (234 SE2d 784) (1977) ("[a] civil statute will withstand an attack of vagueness or indefiniteness if it provides fair notice to those to whom the statute is directed and enables one to determine from the provisions of the Act what the legislative intent was in enacting the Act"), because foreclosure sales are open to the public, see, e.g., OCGA §§ 9-13-161 (a), 44-14-162 (a), we decline to draw a distinction between the common intelligence of foreclosure sale purchasers and that of all persons.

erroneous construction[3] and is equally meritless.

(b) The trial court found that the Legislature intended with OCGA § 9-13-172.1 to "create a mechanism to give homeowners every opportunity to cure a default and avoid the harmful and disturbing effects of foreclosure." We agree with the trial court regarding this legislative intent behind the enactment of OCGA § 9-13-172.1. JIG, however, asserts that the trial court's finding is "the best evidence of the confusion" created by the statute because OCGA § 9-13-172.1 "says nothing about the homeowner." However, there is an unquestionable impact by the statute on homeowners of property in foreclosure who, prior to sale, cure the default or enter into agreements to cure the default. Rather than "evidencing confusion," the trial court's finding as to the Legislature's intent merely states the obvious.

(c) JIG next asserts that OCGA § 9-13-172.1 is unconstitutionally vague due to the use in subsection (d) (3) of the terms "plaintiff in execution" and "defendant in execution." Asserting that these are not terms applicable to non-judicial foreclosures but are used to describe the parties under a sheriff's levy and sale under a judgment lien, JIG argues that it is "anybody's guess" whether OCGA § 9-13-172.1 (d) (3) is applicable to a nonjudicial foreclosure sale. We disagree. While the nomenclature chosen may be imprecise, the nature of the parties discussed in subsection (d) (3) is readily discernible to persons of common intelligence, and no reasonable person could fail to understand that subsection (d) (3) applies when the seller and defaulting party have agreed prior to the sale to cancel the sale based upon an enforceable promise by the defaulting party to cure the default. Where the legislative intent is clear and the statute provides fair notice of its meaning, this Court will not deem a statute unconstitutionally vague merely because it "could be more artfully drafted." *Davenport v. Davenport*, 243 Ga. 613, 615 (2) (255 SE2d 695) (1979).

(d) There is no question that the Legislature, by enacting OCGA § 9-13-172.1, intended to address the limitation of damages in civil actions by purchasers for property sold in certain judicial and certain nonjudicial sales that are later rescinded. See preamble to Ga. L. 2003, p. 413. However, as that preamble also reflects, the statute was enacted to "provide for related matters; to repeal conflicting laws; and for other purposes," id., which clearly establishes the error of JIG's assertion that the statute's "only purpose and intent" is

---

[3] JIG argues that the statute's definition of "eligible sale" is "circular" because it is based on the seller's legal rescission of a sale for reasons not set forth "within the four corners of the Act."

damages limitation. JIG has failed to show how any person of common intelligence would need to guess at the meaning of the damages provision in OCGA § 9-13-172.1 or would differ as to its application. Although JIG asserts that there are no damages in a legally rescinded contract that are in need of limitation, the Legislature decided otherwise in regard to those contracts legally rescinded pursuant to OCGA § 9-13-172.1. It was within the Legislature's broad authority to so decide, see generally *Sears v. State of Ga.*, 232 Ga. 547, 554 (3) (208 SE2d 93) (1974) ("[t]he legislature is absolutely unrestricted in its power to legislate, so long as it does not undertake to enact measures prohibited by the State or Federal Constitution. [Cits.]"), and nothing in OCGA § 9-13-172.1 is rendered unconstitutionally vague by the Legislature's exercise of its discretion. Thus, even assuming, arguendo, that JIG's arguments in this regard properly pertain to a vagueness challenge, we find them to be without merit.

(e) JIG asserts in its final argument that the statute is void for vagueness because a person must guess if OCGA § 9-13-172.1 (d) (3) ever applies, in that it authorizes rescission based upon "an enforceable promise by the defendant to cure the default" yet case law holds that agreements to forbear foreclosure are *un*enforceable unless supported by new consideration from the borrower. See, e.g., *Johnson v. Hinson*, 188 Ga. 639 (2) (4 SE2d 561) (1939) (agreement on part of one to do what he is already legally bound to do is not a sufficient consideration for the promise of another); *All Fleet Refinishing v. West Georgia Nat. Bank*, 280 Ga. App. 676 (9) (634 SE2d 802) (2006). However, in situations where a lender is utilizing OCGA § 9-13-172.1 (d) (3) to rescind a sale of the borrower's property based upon the borrower's promise to cure the default, any person of common intelligence would understand that the lender and borrower have entered into an enforceable agreement.

Accordingly, because JIG has completely failed to carry its burden of showing that OCGA § 9-13-172.1 is unconstitutionally vague in any of its applications, see *Catoosa County v. R. N. Talley Properties*, supra, 282 Ga. at 374; *Jekyll Island-State Park Auth. v. Jekyll Island Citizens Assn.*, supra, 266 Ga. at 153 (2), the trial court did not err by upholding the constitutionality of the statute.

3. JIG contends that the trial court erred by failing to find OCGA § 9-13-172.1 could not be applied retroactively[4] so as to add its provisions to the powers granted Countrywide in the June 2003 mortgage transaction between appellees because the statute was not

---

[4] The trial court did not address this issue in its order but denied JIG's motion for summary judgment in which this issue was raised.

effective until July 1, 2003. See Ga. L. 2003, p. 413; OCGA § 1-3-4 (a) (1). However, it is uncontroverted that JIG was not a party to the transaction between appellees and the sale in this case did not occur until March 6, 2007, well after the effective date of OCGA § 9-13-172.1. This enumeration is without merit.

4. Given our holdings above that the trial court properly upheld the constitutionality of OCGA § 9-13-172.1 and correctly found that Countrywide was authorized to and properly did rescind the sale to JIG, we need not address JIG's remaining arguments.[5]

*Judgment affirmed. All the Justices concur, except Nahmias, J., who concurs in judgment only as to Division 2 (b).*

DECIDED JULY 5, 2011.

*Lefkoff, Duncan, Grimes, McSwain & Hass, John R. Grimes*, for appellant.

*Stites & Harbison, Paul J. Pontrelli, Richard A. Vance, Strickland, Brockington & Lewis, Mary M. Brockington*, for appellees.

*Bryan, Cave, Powell & Goldstein, Walter G. Moeling IV, Justin M. Daniel, David A. Webster, Charles R. Bliss, John R. Bartholomew IV*, amici curiae.

---

[5] Those arguments address JIG's status as a bona fide purchaser in light of certain conditions in the sale, the validity of which JIG also challenges.