**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 25, 2013**

# In the Court of Appeals of Georgia

A13A0936, A13A0937. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v. NORTHSIDE HOSPITAL, INC.; KENNESTONE HOSPITAL, INC. v. NORTHSIDE HOSPITAL, INC.

MILLER, Judge.

This case arises from the Department of Community Health's (the "Department") initial approval of the application of Kennestone Hospital, Inc. ("Kennestone") for a certificate of need ("CON") to develop an ambulatory surgery center ("ASC") in Cobb County based on the Department's determination that the ASC would be part of a hospital and, therefore, subject to less-stringent criteria to qualify for a CON. The Department determined that the ASC was part of a hospital under the provision for a case-by-case determination set forth under the Department's Rule 111-2-2-.40 (1) (a). Northside Hospital, Inc. ("Northside") opposed the CON

and sought administrative review of the Department's initial decision. An appeal panel and the Commissioner of the Department upheld the Department's initial determination. Northside then filed a petition for judicial review in the superior court. The superior court reversed the Department's final decision on the basis that the "case-by-case" provision in the Department's Rule 111-2-2-.40 (1) (a) was unconstitutionally vague because it lacked ascertainable standards and specific guidelines to limit the Department's discretion. We granted the discretionary applications for review filed by the Department and Kennestone.

In Case A13A0936, the Department contends that Northside lacked standing to assert a vagueness challenge to Rule 111-2-2-.40 (1) (a), and that the superior court erred in concluding that the rule was unconstitutionally vague. In Case A13A0937, Kennestone further contends that the superior court erred in finding the rule to be unconstitutionally vague and in failing to apply judicial estoppel to prevent Northside from challenging the constitutionality of the rule since it had previously obtained favorable determinations under it. We conclude that the superior court's decision must be affirmed because the lack of ascertainable standards to guide the

Department's "case-by-case" review under Rule 111-2-2-.40 (1) (a) gives the agency unfettered discretion and fails to provide fair notice to prospective applicants.[1]

Although we review an agency's factual determinations under the "substantial evidence" standard, we conduct a de novo review of the agency's conclusions of law. See *Palmyra Park Hosp., Inc. v. Phoebe Sumter Med. Ctr.*, 310 Ga. App. 487, 488 (714 SE2d 71) (2011); *Walker v. Dept. of Transp.*, 279 Ga. App. 287, 291 (2) (630 SE2d 878) (2006).

The record shows the following.[2] Kennestone, a subsidiary of WellStar Health System, Inc. ("WellStar"), operates two Cobb County acute care hospitals: WellStar Kennestone Hospital, a 633-bed hospital, and WellStar Windy Hill Hospital, a 115-bed long-term care hospital. Both hospitals are located in Marietta. Northside operates two acute care hospitals located in Atlanta and Alpharetta.

---

[1] The Supreme Court of Georgia has exclusive jurisdiction in "[a]ll cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question." Ga. Const. 1983, Art. VI, Sec. VI, Par. II. Administrative regulations, however, are not laws under the meaning of the constitution, and therefore, this Court has jurisdiction to resolve whether Department Rule 111-2-2-.40 (1) (a) is constitutional. See, e.g., *Brosnan v. Undercofler*, 220 Ga. 239 (138 SE2d 314) (1964); *Professional Standards Comm. v. Alberson*, 273 Ga. App. 1, 7 (2), n.3 (614 SE2d 132) (2005).

[2] Most of the relevant facts are not in dispute and can be found in the administrative appeal panel hearing officer's decision.

3

In 2010, Kennestone submitted an application for a CON to develop the ASC, to be called East Cobb Surgery Center, in Marietta. The ASC would be located approximately eight miles from WellStar Windy Hill Hospital and about seven miles from WellStar Kennestone Hospital. Kennestone explained that the ASC would be hospital-based, operate as a department from Windy Hill Hospital, and result in the decommission and transfer of three operating rooms from Windy Hill Hospital to the new location. Kennestone identified the ASC's primary service area as East Cobb County and secondary service area to include the rest of Cobb County and parts of Cherokee, Bartow, and Paulding Counties.

In reviewing Kennestone's CON application, which was opposed by Northside, the Department determined that the ASC was "part of a hospital" under the "case-by-case" review provided by Rule 111-2-2-.40 (1) (a). Pursuant to Rule 111-2-2-.40 (1) (a), new ambulatory surgery services are subject to specific review considerations unless such service is or will be provided as "part of a hospital." An ambulatory surgery service is considered to be "part of the hospital" if it is located: (a) within the hospital; or (b) in a building on the hospital's primary campus and that building, or relevant portion thereof, is included in the hospital's permit issued by the State's licensing agency, subject to determination by the Department. Ga. Comp. R. & Regs.

r. 111-2-2-.40 (1) (a). Rule 111-2-2-.40 (1) (a) further provides that "[t]he Department also will make a determination of reviewability on a case-by-case basis in other situations involving hospitals."

The Department concluded that the ASC would be "part of a hospital," reviewed the CON application under the general considerations of Rule 111-2-2-.09 (1) and, under such review, decided to issue Kennestone a CON for its ASC.[3] In concluding that the ASC was "part of the hospital" under a case-by-case review, however, the Department set forth no reasoning to explain its conclusion.

Northside appealed the Department's decision to issue a CON to an appeal panel, and an administrative hearing officer held a hearing on the appeal. At the hearing, the Department presented testimony from Marsha Hopkins, its primary witness, who during the relevant review period, was the Executive Director of the Division of Health Planning for the Department. Hopkins testified that she was the Department official who approved Kennestone's CON application, and that the Department concluded that the ASC was part of the hospital because the service was

_____

[3] "If an ambulatory surgery service, which is part of a hospital, involves a capital expenditure, which exceeds the CON threshold and does not increase the number of ambulatory surgery operating rooms, the project will be reviewed under the General Review Considerations (111-2-2-.09)." Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (d).

located within Windy Hill Hospital. Hopkins also testified that the ASC was part of the hospital because it was located in a building on the hospital's primary campus and included on the hospital's permit. Hopkins initially testified that she did not conduct a case-by-case determination as to whether the ASC was part of a hospital since it was within the hospital and on the hospital's permit. Hopkins reversed herself and later explained that she did in fact conduct a case-by-case analysis, and under such review, she concluded that the ASC was part of a hospital because the existing location of the operating rooms was in Windy Hill Hospital and the operating rooms were under the hospital's license. Hopkins confirmed, however, that the Department had no written guidelines or limitations, such as geographic distance, which would aid the Department in conducting a case-by-case determination, and she was unaware of prior Department decisions on the issue. Hopkins stated that aside from the common licensure factor, she was not aware of any other factors that she took into account when making the determination that the ASC was part of the hospital.

Hopkins also testified that she had consulted with Bruce Henderson, a Senior Review Analyst with the Department, who also reviewed Kennestone's CON application. Henderson testified that he conducted a case-by-case determination of whether the ASC was part of a hospital, and in his review, he considered the fact that

6

the ASC could be added to Windy Hill Hospital's permit. Hopkins and Henderson both testified that they also considered the fact that the ASC did not involve the addition of operating rooms to Windy Hill Hospital's inventory.

Following the hearing, the administrative hearing officer found that the Department's conclusion that the ASC was part of the hospital was reasonable and supported by the evidence. The hearing officer further found that the Department's consideration of a proposed ambulatory surgery service as part of a hospital when it would be included on the hospital's permit, while not specifically required under Rule 111-2-2-.40 (1) (a), was reasonable and consistent with the Department's policies. As a result, the hearing officer upheld the Department's determination that Kennestone's ASC was "part of a hospital" and that it met the general considerations set forth in Rule 111-2-2-.09 to qualify for a CON.

Northside appealed the hearing officer's decision to the Commissioner of the Department, and the Commissioner, through an appointed representative, adopted the appeal panel's factual findings and affirmed the decision to issue a CON to Kennestone. Northside filed a petition for review in the superior court, and the superior court reversed the Department's final decision on the basis that the "case-by-

case" language of Rule 111-2-2-.40 (1) (a) was unconstitutionally vague because it lacked sufficient guidelines and standards to limit the Department's discretion.

*Case No. A13A0936*

1. The Department argues that Northside lacked standing to challenge Rule 111-2-2-.40 (1) (a) on vagueness grounds. We disagree.

The appeal of the Department's ruling on a CON application is governed by the Administrative Practice Act. OCGA § 31-6-44 (m). Under the Administrative Practice Act, a person must meet two requirements before seeking judicial review of an agency action: a person must have "exhausted all administrative remedies available within the agency and [must be] aggrieved by a final decision in a contested case[.]" OCGA § 50-13-19 (a).

> In the context of the Administrative Practice Act, the word "aggrieved" has been interpreted to mean that the person seeking to appeal must show that he has an interest in the agency decision that has been specially and adversely affected thereby.

(Citation and punctuation omitted.) *Chattahoochee Valley Home Health Care, Inc. v. Healthmaster, Inc.*, 191 Ga. App. 42, 43 (1) (a) (381 SE2d 56) (1989). "[O]ne who suffers or will suffer economic injury as the result of an administrative decision may be considered aggrieved for purposes of obtaining judicial review of the decision."

8

(Citations omitted.) Id. at 43 (1) (a); see also *Atlanta Taxicab Co. Owners Assn., Inc. v. City of Atlanta*, 281 Ga. 342, 345 (2) (638 SE2d 307) (2006) (in order to challenge an administrative action taken pursuant to a statute, the plaintiff must normally show that it has interests or rights which *are or will be affected* by the action). Thus, it is "well-settled that a business entity may be considered 'aggrieved' by an administrative decision which confers an economic benefit upon a competitor." (Punctuation omitted.) *Chattahoochee Valley*, supra, 191 Ga. App. at 43 (1) (a).

Here, during the administrative appeal process, the Department never contented that Northside lacked standing to challenge Kennestone's CON application, including on grounds that Rule 111-2-2-.40 (1) (a) was unconstitutionally vague.[4] Instead, in preparation for the appeal panel administrative hearing, the Department noted that Northside had appeared at a Department meeting to oppose Kennestone's CON application, and that by doing so, Northside secured its standing to challenge the CON application.

Additionally, the evidence shows that Northside would be a competitor aggrieved by the grant of Kennestone's CON application for the ASC in East Cobb

---

[4] The Department concedes that it never raised the standing issue below. Kennestone did, however, raise the standing issue during the administrative process, and the superior court considered and rejected Kennestone's standing argument.

9

County. Specifically, evidence shows that Northside Hospital in Atlanta is located approximately eight miles from the location of the ASC, and the primary service area of the ASC would partially overlap the area served by Northside. Based on this evidence, along with the Department's own representations in the administrative review process that Northside secured its standing to challenge Kennestone's CON application, we find the Department's arguments to be meritless and conclude that Northside has standing to challenge the application of Rule 111-2-2-.40 (1) (a) in this case. See *Chattahoochee Valley*, supra, 191 Ga. App. at 43 (1) (a); see also *North Fulton Med. Ctr., Inc. v. Roach*, 263 Ga. 814, 815 (2) (a), n.1 (440 SE2d 18) (1994).

2. In several enumerations of error, the Department contends that the superior court erred in its vagueness analysis and in concluding that Rule 111-2-2-.40 (1) (a) was unconstitutionally vague. We disagree.

In reviewing the constitutionality challenge, we must keep in mind

that the constitutionality of a statute is presumed, and that all doubts must be resolved in favor of its validity . . . . Of course, it has long been recognized that the General Assembly is empowered to enact laws of general application and then delegate to administrative officers or agencies the authority to make rules and regulations necessary to effectuate such laws.

(Citations and punctuation omitted.) *Albany Surgical, P.C. v. Ga. Dept. of Community Health*, 278 Ga. 366, 368 (2) (602 SE2d 648) (2004).

The Department is charged with adopting and implementing rules sufficient to administer the CON program.[5] See *Palmyra*, supra, 310 Ga. App. at 491 (1). "If reviewing courts find that [the Department] has acted within the authority granted the agency by statute, they defer to [the Department's] interpretation and application of the CON statute and the rules and regulations it has enacted to fulfill the function given it by the legislative branch." (Citation omitted.) Id.; see also *Pruitt Corp. v. Ga. Dept. of Community Health*, 284 Ga. 158, 159 (2) (664 SE2d 223) (2008).

> The courts defer to agency interpretation when appropriate because agencies provide a high level of expertise and an opportunity for specialization unavailable in the judicial or legislative branches. They are able to use these skills, along with the policy mandate and discretion entrusted to them by the legislature, to make rules and enforce them in

---

[5] "The CON program, OCGA § 31-6-40 et seq., establishes a comprehensive system of planning for the orderly development of adequate health care services throughout the state." (Citations omitted.) *Palmyra*, supra, 310 Ga. App. at 488. The Department is the "lead planning agency for all health issues" in Georgia and, therefore, is responsible for granting or denying CON applications. OCGA §§ 31-2-1 (1), 31-6-43 (g). To assist in the CON review, the legislature authorized the Department to promulgate rules setting forth the criteria for evaluating applications. See OCGA §§ 31-6-21 (b) (4), 31-6-21.1. At a minimum, a new health care service must be consistent with a list of general considerations, including the establishment of a need for the services. OCGA § 31-6-42 (a).

fashioning solutions to very complex problems. Thus, their decisions are not to be taken lightly or minimized by the judiciary.

(Punctuation omitted.) *Palmyra*, supra, 310 Ga. App. at 491 (1). While reviewing courts defer to the agency's interpretation of statutes and regulations it is charged with enforcing or administering,

the agency's interpretation is not binding on the courts, which have the ultimate authority to construe statutes. . . . The judicial branch makes an independent determination as to whether the interpretation of the administrative agency correctly reflects the plain language of the statute and comports with the legislative intent.

(Citations and punctuation omitted.) *Handel v. Powell*, 284 Ga. 550, 553 (670 SE2d 62) (2008).

"To withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent." (Citation omitted.) *Bell v. Austin*, 278 Ga. 844, 847 (2) (b) (607 SE2d 569) (2005). A law is considered unconstitutionally vague if persons of common intelligence must guess at its meaning and differ as to its application. *Alberson*, supra, 273 Ga. App. at 8 (2). When, as here, a statute or regulation does not implicate constitutionally protected conduct, a facial vagueness challenge will be upheld only if the enactment is impermissibly vague in all of its

12

applications. See *JIG Real Estate, LLC v. Countrywide Home Loans, Inc.*, 289 Ga. 488, 491 (2) (712 SE2d 820) (2011). Moreover, "there is a greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." (Citations and punctuation omitted.) *Thelen v. State*, 272 Ga. 81, 82 (526 SE2d 60) (2000). Nevertheless, when a statute or regulation gives an agency unfettered discretion with no objective standards, the statute or regulation has been held to be unconstitutionally vague. See, e.g., *Fleck & Assoc., Inc. v. City of Atlanta*, 260 Ga. 105, 106 (2) (a) (390 SE2d 396) (1990) (city code giving city officials the absolute authority to issue, renew, or revoke a license or permit under "any proper criterion or standard" was the equivalent of no standard at all); *Davidson Mineral Properties, Inc. v. Monroe County*, 257 Ga. 215, 216 (1) (357 SE2d 95) (1987) (resolutions giving the Board of Commissioners absolute discretion to grant or deny construction permits with no standards whatsoever to control that discretion and without providing any notice to applicants of the criteria for the issuance of permits were too vague to be enforced); *Arras v. Herrin*, 255 Ga. 11, 12 (334 SE2d 677) (1985) (county ordinance setting forth Board of Commissioners' absolute discretion to grant beer and wine license was unconstitutional because it was not "tempered with ascertainable standards").

Here, Rule 111-2-.40 (1) (a) provides:

> If the ambulatory surgery service is or will be provided as "part of a hospital", the hospital's provision of such service is not subject to Certificate of Need (CON) review under this rule. For purposes of this rule, the following are always considered to be "part of a hospital": a) if the service is located within a hospital; or, b) if the service is located in a building on the hospital's primary campus and that building, or relevant portion thereof, is included within the hospital's permit issued by the State's licensing agency, subject to determination by the Department. The Department also will make a determination of reviewability on a case-by-case basis in other situations involving hospitals.

Ga. Comp. R. & Reg. r. 111-2-2-.40 (1) (a).

The entirety of Rule 111-2-2-.40 (1) (a) is clearly directed at hospitals, and the clear intent of the rule is to exempt ambulatory surgery services that are considered to be "part of a hospital" from the specific considerations set forth in Rule 111-2-2-.40 (3).[6] That is where the clarity ends.

The "case-by-case" language of Rule 111-2-2-.40 (1) (a) does not provide persons of common intelligence a common understanding as to how the Department would apply the "case-by-case" determination rule "in other situations" involving

---

[6] It should be noted that it is undisputed that Kennestone's CON application would not be approved under the more stringent considerations for service-specific criteria set forth in Rule 111-2-2-.40 (3). When applying the service-specific review for ambulatory surgery services, the Department concluded that Kennestone's CON application would be denied.

hospitals. Specifically, while the rule sets forth two clear criteria as to when an ambulatory surgery service is automatically considered "part of a hospital," the rule provides no criteria or objective standards for a determination of when a surgery service would otherwise be considered to be "part of a hospital." Compare *Charter Medical-Fayette County, Inc. v. Health Planning Agency, Inc.*, 181 Ga. App. 184, 185 (4) (351 SE2d 547) (1986) (Department regulation regarding hospital bed need was not unconstitutionally vague because it listed several factors the Department would use in making its determination). Instead, Rule 111-2-2-.40 (1) (a) gives the Department absolute discretion to determine whether an off-site and off-campus surgery service is "part of a hospital."

Indeed, the lack of guidelines and unlimited discretion is evidenced by the Department's own actions in the review process. In the initial determination approving Kennestone's CON application, the Department provided no explanation for why the ASC was considered "part of the hospital" under the case-by-case determination. At the subsequent administrative appeal hearing, Hopkins, the Former Executive Director of the Division of Health Planning for the Department who made this initial determination, provided vague and inconsistent rationales for her determination. Hopkins first testified that the ASC satisfied subpart (a) of Rule 111-2-

15

2-.40 (1) (a) because it was located within Windy Hill Hospital. She further testified that the ASC satisfied subpart (b) of the rule of Rule 111-2-2.40 (1) (a) because the operating rooms were currently located on the Windy Hill Hospital's campus and were included on the hospital's permit. Additionally, despite the Department's order stating that it had concluded that the ASC was part of the hospital on a case-by-case determination, Hopkins testified that neither she, nor anyone else at the Department, ever conducted a "case-by-case" determination of whether the ASC was part of a hospital. Although Hopkins later testified that the project was, in fact, reviewed under a "case-by-case" determination, her explanation that such review was based on the current location of the operating rooms is illogical given that the entire purpose of the CON application was to move the operating rooms out of Windy Hill Hospital. Moreover, Hopkins confirmed that: the Department had no written guidelines or limitations, such as geographic distance, regarding a case-by-case determination; she was unaware of prior Department decisions on the issue; and aside from the fact that the ASC would share Windy Hill Hospital's permit, she was unaware of any other factors that she took into account when making the case-by-case determination. The Department's explanations clearly show unbridled and unguided discretion. Furthermore, the Department's explanations as to what it considered in its case-by-

case determination are nothing more than post-hoc rationales that are insufficient to save the statute from vagueness. These rationales do not provide fair notice as to clear and definite guidelines that the Department would use in a case-by-case determination. cf. *Hall v. State*, 268 Ga. 89, 95 (2) (485 SE2d 755) (1997) (post-hoc rationales cannot save an impermissibly vague statute that allows officials to make determinations based on their subjective and ad-hoc analysis).

Additionally, the Department's post-hoc explanation showed that it relied primarily on the fact that the ASC would share a common permit with Windy Hill Hospital. A case-by-case determination based principally on common licensure would render subpart (b) of Rule 111-2-2-.40 (1) (a) meaningless, because subpart (b) contains a common licensure requirement, as well as a geographic element (being located in a building on the hospital's campus). Ga. Comp. R. & Reg. r. 111-2-2-.40 (1) (a). We "must endeavor to give each part of the [regulation] meaning and avoid constructions that make some language mere surplusage or meaningless." (Punctuation omitted.) *Aimwell, Inc. v. McLendon Enterprises, Inc.*, 318 Ga. App. 394, 397 (1) (734 SE2d 84) (2012). As a result, the Department's use of a common license to guide its case-by-case determination is untenable.

17

Likewise, to the extent the Department asserts that prior agency determinations provide sufficient standards to limit the "case-by-case" language under Rule 111-2-2-.40 (1) (a), those determinations have no application here. Specifically, the Department notes that it had issued multiple rulings stating that Northside's acquisition of facilities located off its campus would be considered "hospital-based," if these facilities were added to Northside's permit once acquired. These rulings, however, were not made in a case such as the one before this Court. Rather, the cited rulings were made in Letters of Determination issued pursuant to Department Rule 111-2-2-.10 following Northside's acquisition of facilities that already had approved CONs. Under OCGA § 31-6-47 (a) (9), expenditures for the acquisition of existing health care facilities do not require CON approval. Any person proposing such an acquisition, however, must submit a request for a letter of determination from the Department, and the Department's written response (or Letter of Determination) would confirm that the proposed activity was exempt from review. See Ga. Comp. R. & Reg. r. 111-2-2-.10 (2). Rule 111-2-2.10 specifically provides, however, that

> Determinations and Letters of Non-Reviewability are conclusions of the Department that are based on the specific facts and are limited to the specific issues addressed in the request for determination or letter of non-reviewability, as applicable. Therefore, the conclusions of a specific determination or letter of non-reviewability *shall have no binding*

18

*precedent in relation to parties not subject to the request and to other facts or factual situations that are not presented in the request.*

(Emphasis added.) Ga. Comp. R. & Regs. r. 111-2-2-.10 (1) (a). Moreover, "[t]his rule shall not be construed as providing an administrative remedy for decisions made by the Department pursuant to [OCGA] § 31-6-43, which involve the approval or denial of applications for certificates of need." Ga. Comp. R. & Regs. r. 111-2-2-.10 (1) (b). Based on the plain language of the Department's own rules, the decisions it makes in Letters of Determination have no application to other cases, including those involving the grant or denial of CON applications.

We are sympathetic to the fact that a specialized agency may need to make determinations on a case-by-case basis because it will often confront special problems or considerations that require a flexible approach to a resolution. The agency, however, must set identifiable standards to guide its judgment when operating under a case-by-case determination. See *Oceana, Inc. v. Locke*, 670 F.3d 1238, 1241 (II) (D.C. Cir. 2011); cf. *Fleck*, supra, 260 Ga. at 106 (2) (a) (city code unconstitutionally vague where it gave city officials unlimited discretion over permit applications without defined standards to guide discretion); *Davidson Mineral Properties*, supra, 257 Ga. at 216 (1) (resolutions struck down on vagueness grounds where they gave

19

Board of Commissioners absolute discretion to grant or deny construction permits with no standards to guide decision); *Arras*, supra, 255 Ga. at 12 (county ordinance was unconstitutionally vague where it gave Board of Commissioners absolute discretion to grant beer and wine license without ascertainable standards). The Department's failure to include ascertainable standards to guide the "case-by-case" determination improperly gives it uncontrolled discretion and, therefore, renders the regulation unconstitutionally vague.

*Case No. A13A0937*

3. In light of our holding in Division 2, we need not address Kennestone's contention that Rule 111-2-2-.40 (1) (a) is not unconstitutionally vague.

4. Kennestone also argues that the superior court erred in failing to apply judicial estoppel to preclude Northside from taking inconsistent positions on the issue of what off-campus facilities are hospital-based. We disagree.

Under the doctrine of judicial estoppel, a trial court has the discretion to preclude "a party from asserting a position in a judicial proceeding which is inconsistent with a position previously successfully asserted by it in a prior proceeding." (Citations and punctuation omitted.) *Pechin v. Lowder*, 290 Ga. App. 203, 203-204 (659 SE2d 430) (2008). Application of judicial estoppel depends on

20

three factors: (1) the party's later position must be clearly inconsistent with a previously held position; (2) the party must have successfully persuaded a court to accept the earlier inconsistent position; and (3) the party must be in a position to derive an unfair advantage or impose an unfair detriment upon the opposing party if not estopped. Id. at 204.

In support of its argument that Northside has taken inconsistent positions, Kennestone relies upon the Letters of Determination that were discussed above in Division 2. The evidence, at most, shows that Northside had requested that the acquired facilities, which had prior CON authorizations, be transferred to Northside without additional CON review and approval by having the Department confirm that the facilities could be operated by Northside as hospital-based ambulatory surgery services and could be added to the hospital's permit. The evidence relied upon by Kennestone does not show, however, that Northside requested that new facilities be treated as part of a hospital for purposes of receiving a CON for those new facilities. Additionally, the Department's rulings on Northside's requests were made through Letters of Determination, and as set forth above in Division 2, Letters of Determination have no bearing on CON applications, such as the case here. Therefore, Northside has not clearly taken inconsistent positions on the matter of

21

whether a new, off-campus surgery service center is "part of a hospital" for purposes of a CON application. Based on these circumstances, we cannot say that the trial court abused its discretion in failing to apply the doctrine of judicial estoppel.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*