FINAL COPY
295 Ga. 446

S14G0341. GEORGIA DEPARTMENT OF COMMUNITY HEALTH v.
NORTHSIDE HOSPITAL, INC.
S14G0346. KENNESTONE HOSPITAL, INC. v. NORTHSIDE HOSPITAL,
INC.

MELTON, Justice.

These consolidated appeals arise from the Georgia Department of Community Health's ("DCH's") granting of an application for a Certificate of Need ("CON") to develop an outpatient ambulatory surgery service in East Cobb County to Kennestone Hospital, Inc. ("Kennestone").[1] Kennestone's application was eventually approved by the DCH after the service was determined to be "part of a hospital" pursuant to Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (a), which is the regulation at issue in this case. Northside Hospital, Inc. ("Northside") opposed the CON and sought administrative review of the DCH's initial decision. After the appeal was unsuccessful, Northside then filed a petition for judicial review in the Superior Court of Fulton County. See OCGA § 31-6-44.1. The superior court reversed the DCH's decision to grant the CON on the basis that the "case-by-case" provision in Ga. Comp. R. & Regs. r. 111-2-2--.40 (1) (a) was unconstitutionally vague. The Court of Appeals upheld the

_____

[1] Kennestone is a private, not-for-profit corporation that is a wholly-owned subsidiary of WellStar Health System, Inc.

superior court's determination, <u>Ga. Dept. of Community Health v. Northside Hosp.</u>, 324 Ga. App. 326 (750 SE2d 401) (2013),[2] and this Court granted certiorari to determine whether the Court of Appeals erred in determining that Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (a) was unconstitutionally vague.[3] For the reasons that follow, we reverse.

The record reveals that Kennestone operates two hospitals in the service area, WellStar Kennestone Hospital and WellStar Windy Hill Hospital. Kennestone's application was approved after the surgery service was determined to be "part of a hospital" pursuant to Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (a) (hereinafter referred to as "the Rule"), which provides, in part, that if an ambulatory surgery service is or will be provided as part of a hospital,[4] it is not

---

[2] The Court of Appeals has jurisdiction over constitutional challenges to administrative regulations. <u>Brosnan v. Undercofler</u>, 220 Ga. 239 (138 SE2d 314) (1964).

[3] Because the central question to be answered in both Case Nos. S14G0341 and S14G0346 is the same, the arguments from both appeals will be consolidated for purposes of this opinion.

[4] Under the DCH's rules, the fifteen more stringent service-specific review considerations of Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (a)-(o) must be applied to all CON projects involving "ambulatory surgery services" unless such services will be (a) "part of a hospital" and (b) the applicant will not increase the number of operating rooms that are associated with the hospital. See Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (a) and (d). If the project is "part of a hospital," it is not subject to service-specific review, but only review under the more lenient General Considerations of Ga. Comp. R. & Regs. r. 111-2-2-.09. However, not

subject to more stringent service-specific CON review by the DCH. An ambulatory surgery service is part of a hospital "a) if the service is located within a hospital; or, b) if the service is located in a building on the hospital's primary campus and that building, or relevant portion thereof, is included within the hospital's permit . . . ." However, for situations that do not fall squarely under subparts (a) and (b) of the Rule, the Rule's final sentence provides that "[t]he [DCH] also will make a determination of reviewability on a case-by-case basis in other situations involving hospitals."[5]

Here, Kennestone sought to create an ambulatory surgery service seven miles from the main WellStar Kennestone Hospital campus and eight miles from WellStar's Windy Hill Hospital; Kennestone stated that the service would be hospital-based, operate as a department of Windy Hill Hospital, and result in the decommission and transfer of three operating rooms from Windy Hill Hospital to the new ambulatory surgery service location. Pursuant to the final sentence

---

all "ambulatory surgery services" proposed by hospitals will be considered "part of a hospital." To be afforded special treatment as "part of a hospital" (i.e. to avoid the more stringent service-specific considerations of Ga. Comp. R. & Regs. r. 111-2-2-.40 (3) (a)-(o) and have one's CON application considered under the more lenient General Considerations of Ga. Comp. R. & Regs. r. 111-2-2-.09), a proposed ambulatory surgery service must satisfy Ga. Comp. R. & Regs. r. 111-2-2-.40 (1) (a) (the "Rule").

[5] It is this final sentence of the Rule that the Court of Appeals determined to be unconstitutionally vague.

3

of the Rule, the DCH conducted "case-by-case" review and concluded that the ambulatory surgery service was "part of a hospital."

In order to resolve the question whether the Rule at issue here is unconstitutionally vague, we must bear in mind that the Rule cannot be read independently of the statutory framework upon which it is based. See Mulligan v. Selective HR Solutions, Inc., 289 Ga. 753, 756 (1) (716 SE2d 150) (2011) ("It is within the purview of this Court to consider the validity of an agency rule by determining whether it comports with the legislative enactment which authorizes the rule") (citation omitted). See also OCGA § 31-6-21.1 (a) ("Rules of the [DCH] shall be adopted, promulgated, and implemented as provided in this Code section and in . . . the 'Georgia Administrative Procedure Act'"); OCGA § 31-6-42 (a) (The decision "with respect to the [DCH's] grant or denial of a certificate of need[ ] shall be based on the applicable considerations specified in this Code section and reasonable rules promulgated by the department interpretive thereof."). In this connection, the DCH is bound by the statutory definitions included in the Georgia statutes governing the issuance of CONs. These definitions make clear that a "hospital" is

> an institution which is primarily engaged in providing to inpatients, by or under the supervision of physicians, diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons or rehabilitation services for the rehabilitation of injured, disabled, or sick persons. Such term includes public, private, psychiatric, rehabilitative, geriatric, osteopathic, and other specialty hospitals.

4

OCGA § 31-6-2 (21). Furthermore, an entity that provides ambulatory surgery services and that is not part of a hospital is an "ambulatory surgical center" (ASC). OCGA § 31-6-2 (1) (An ASC is "a public or private facility, *not a part of a hospital*, which provides surgical or obstetrical treatment performed under general or regional anesthesia in an operating room environment to patients not requiring hospitalization.") (emphasis supplied).

Thus, an ambulatory surgery service may be provided as part of a hospital, but the service will only be considered to be "part of" that hospital (and not its own independent ASC) if the facility is part of

> an institution which is primarily engaged in providing to inpatients, by or under the supervision of physicians, diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons or rehabilitation services for the rehabilitation of injured, disabled, or sick persons. Such term includes public, private, psychiatric, rehabilitative, geriatric, osteopathic, and other specialty hospitals.

See OCGA § 31-6-2 (1) and (21) and the Rule.

We must also bear in mind that "all presumptions are in favor of the constitutionality of [a statute or regulation]." (Citation and punctuation omitted.) JIG Real Estate, LLC v. Countrywide Home Loans, Inc., 289 Ga. 488, 490 (2) (712 SE2d 820) (2011). In this regard, "every reasonable construction must be resorted to, in order to save a statute [or regulation] from unconstitutionality." (Citations and punctuation omitted.) Haley v. State, 289 Ga. 515, 522 (2) (b)

(712 SE2d 838) (2011). Where, as here, the challenge to the regulation has not been made in a First Amendment overbreadth context, Northside can only succeed on its facial vagueness challenge to the Rule "by establish(ing) that no set of circumstances exists under which the [Rule] would be valid, i.e., that the law is unconstitutional in all of its applications, or at least that the [regulation] lacks a plainly legitimate sweep." (Citation and punctuation omitted.) Blevins v. Dade County Bd. of Tax Assessors, 288 Ga. 113, 118 (3) (702 SE2d 145) (2010). In this connection, "[t]o withstand an attack of vagueness or indefiniteness, a civil statute must provide fair notice to those to whom the statute is directed and its provisions must enable them to determine the legislative intent." (Citation omitted.) Jekyll Island State Park Auth. v. Jekyll Island Citizens Assn., 266 Ga. 152, 153 (2) (464 SE2d 808) (1996).

Northside argues that the last sentence of the Rule is unconstitutionally vague because it does not provide fair notice to those to whom the Rule is directed in order to allow them to determine when an ambulatory surgery service will be considered to be "part of a hospital" under case-by-case review by the DCH.[6] See the Rule, supra ("[t]he [DCH] also will make a determination of

_____

[6] It is worth noting that Northside concedes that the phrase "part of a hospital," as used in the Rule and authorizing statutes, is not unconstitutionally vague. So, it could be said that, essentially, Northside is contending that the Rule, which is designed to give *more* context to the clear phrase "part of a hospital," is somehow having the opposite effect and making the meaning of the

reviewability on a case-by-case basis in other situations involving hospitals").

We disagree.

Again, the Rule states:

> If [an] ambulatory surgery service is or will be provided as "part of a hospital", the hospital's provision of such service is not subject to [service-specific] Certificate of Need (CON) review under this rule. For purposes of this rule, the following are always considered to be "part of a hospital": a) if the service is located within a hospital; or, b) if the service is located in a building on the hospital's primary campus and that building, or relevant portion thereof, is included within the hospital's permit issued by the State's licensing agency, subject to determination by the [DCH]. The [DCH] also will make a determination of reviewability on a case-by-case basis in other situations involving hospitals.

The gist of the Rule is to afford a less stringent review for ambulatory surgery service proposals that are "part of a hospital." It should be noted that, without more, a rule that simply stated this general principle would necessarily involve some form of "case-by-case" review even if the rule did not explicitly state as much. The Rule here, however, goes on to attempt to narrow the scope of what it means to be "part of a hospital" for these purposes. Indeed, by its plain terms, the Rule provides specific circumstances under which an ambulatory surgery service will always be considered to be "part of a hospital" pursuant to subparts (a) and (b), and provides the DCH with the ability to make "case-by-case" determinations about whether a surgery service is "part of a hospital" in

_____

phrase unclear to the point of it becoming unconstitutionally vague.

7

"other situations involving hospitals" that do not fall squarely under subparts (a) and (b). The Rule acknowledges that subparts (a) and (b) do not identify the full range of possibilities for what it means to be "part of a hospital." All other circumstances continue to be reviewed on a "case-by-case" basis.

Furthermore, the final sentence of the Rule cannot be read in isolation from the other language contained in it. Slakman v. Continental Cas. Co., 277 Ga. 189, 191 (587 SE2d 24) (2003) (Fundamental rules of statutory construction "require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage") (citations omitted); Schwartz v. Black, 200 Ga. App. 735, 736 (409 SE2d 681) (1991) (looking to rules of statutory interpretation in construing administrative rules and regulations). Subparts (a) and (b) of the Rule make clear that factors such as the location of a proposed ambulatory surgery service and whether or not the proposed service would be included within the hospital's permit can be important, and sometimes even dispositive, factors in the determination of whether an ambulatory surgery service is "part of a hospital." Where the proposed ambulatory surgery service fails to strictly meet the requirements of subparts (a) and (b), the service might still be sufficiently connected to the hospital. For example, although an ambulatory surgery service might not be "located within" a particular hospital or be "located in a building on the hospital's primary campus," it could still be sufficiently close to that

8

hospital or connected to that hospital in order for the DCH to reach a reasonable conclusion that the service is still "part of" that hospital. In this connection, subparts (a) and (b) of the Rule operate to give context, not only to when an ambulatory surgery service would "always" be considered to be "part of a hospital," but also to give context to the manner in which "case-by-case" review must be employed to determine whether a proposed ambulatory surgery service is indeed still "part of a hospital" even though it does not strictly satisfy the requirements of subparts (a) and (b).

Accordingly, the Rule at issue in this case must be reasonably read to mean that an ambulatory surgery service is "part of a hospital" where (1) it is part of an entity defined as a "hospital" under OCGA § 31-6-2 (21), and (2) the DCH makes an independent determination that the ambulatory surgery service is part of that "hospital" after considering factors including, but not limited to, the location of the proposed surgery service in relation to the hospital and whether or not the proposed surgery service would be included within the hospital's permit. We conclude that this straightforward construction of the Rule provides "fair notice to those to whom [it] is directed and its provisions . . . enable them to determine the legislative intent." Jekyll Island State Park Auth., supra. See also Professional Standards Commission v. Alberson, 273 Ga. App. 1 (2) (614 SE2d 132) (2005) (Professional Standards Commission ethics rule authorizing teacher discipline for "any other good and sufficient cause" in the Commission's

9

discretion was not unconstitutionally vague). Indeed, anyone applying for a CON is put on notice by the Rule itself and by the statutory framework of which the Rule is a part that (1) a hospital is a certain type of entity, and (2) an ambulatory surgery service can be deemed to be part of that specific entity through the DCH's consideration of several factors — some of which will automatically show that the ambulatory surgery service is "part of a hospital." In short, it cannot be said that "no set of circumstances exist[ ] under which the [Rule] would be valid . . . or at least that the [regulation] lacks a plainly legitimate sweep" (Blevins, supra), as the Rule merely provides a necessary means for the DCH to consider whether an ambulatory surgery service may still be "part of a hospital" even where the surgery service does not fall within the specific, non-exclusive language of subparts (a) and (b) of the Rule. Thus, contrary to Northside's contentions, the Rule is not unconstitutionally vague on its face, and the Court of Appeals was incorrect to conclude otherwise.[7]

---

[7] While we conclude that the Rule is not unconstitutionally vague on its face, we must emphasize that we do not reach any issue relating to whether the DCH abused its discretion under the Rule by awarding a CON to Kennestone under the circumstances presented here. Although the trial court ruled against Northside on its claim that the DCH applied the Rule in an arbitrary and capricious manner under the facts of this case, Northside did not appeal that adverse ruling. We therefore do not address any issue relating to the manner in which the DCH applied the Rule under the present facts. Indeed, the question whether the DCH abused its discretion pursuant to the Rule is a separate question from constitutionality of the Rule itself.

Judgments reversed. Thompson, C. J, Hines, P. J., Benham, Hunstein, Nahmias, JJ., and Judge Ronnie Joe Lane concur. Blackwell, J., not participating.

Decided June 30, 2014.

Certiorari to the Court of Appeals of Georgia.

Samuel S. Olens, Attorney General, Isaac Byrd, Deputy Attorney General, Daniel S. Walsh, Senior Assistant Attorney General, Alex F. Sponseller, LaRonica K. Lightfoot, Brittany N. Jones, Assistant Attorneys General, for Georgia Department of Community Health.

McKenna, Long & Aldridge, Kathlynn B. Polvino, Robert M. Rozier, George Darden, for Northside Hospital.

Parker, Hudson, Ranier & Dobbs, Ashley F. Hoffman, Armando L. Basarrate II, for Kennestone Hospital.